## Richmond

### VIRGINIA ALCOHOLIC BEVERAGE CONTROL COMMISSION

### v.

### YORK STREET INN, INC.

August 30, 1979.

Record No. 771719.

Present: All the Justices.

*James E. Ryan, Jr., Deputy Attorney General (Marshall Coleman, Attorney General; William P. Bagwell, Jr., Assistant Attorney General,* on brief), for appellant.

*Guy R. Friddell, III (Thomas H. Willcox, Jr.; Willcox, Savage, Lawrence, Dickson & Spindle, P.C.,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This is an appeal from a declaratory judgment reversing a decision of the Alcoholic Beverage Control Commission (Commission).

York Street Inn, Inc. (licensee), operates a full-service restaurant in Williamsburg and holds a license to serve alcoholic beverages. The restaurant was renovated in early 1976, and the game of backgammon was employed as part of the new motif. Pursuing this decorative scheme, licensee installed a 22-foot counter surfaced with five wood-

inlaid backgammon boards. A local inspector for the Commission advised licensee that its new counter could not be used for the service of alcoholic beverages because it was not a "table" or "counter" as defined in the Commission's regulations.

By letter dated May 25, 1976, licensee's counsel requested permission to use the counter as designed. The Commission considered and denied the request. Licensee then arranged an informal conference with Commission personnel and on July 8, 1976, the request was reconsidered and again refused. Fearing that use of the counter would jeopardize its ABC license, licensee removed it and filed this action for declaratory judgment. The Commission's demurrer on jurisdictional grounds was overruled. By letter opinion and final order dated August 25, 1977, the court held that the Commission had acted arbitrarily and capriciously in finding the backgammon table did not satisfy regulatory standards, suspended the Commission's action, and remanded the matter for further proceedings.

 We consider first the question whether the court had jurisdiction to entertain licensee's challenge to the Commission's action by way of motion for declaratory judgment.

Code § 9-6.14:16, section 16 of the Administrative Process Act (hereinafter, APA), provides *inter alia* that any "party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to the direct review thereof . . . by an appropriate and timely court action against the agency. . . . Such proceedings include those for declaratory judgments. . . ." The term "case decision" is defined in APA section 4(D), Code § 9-6.14:4(D), as

"any agency proceeding or *determination* that, under laws or *regulations* at the time, a named party as a matter of past or present fact, *or of threatened or contemplated private action,* either is, is not, or may or may not be (i) *in violation of such law or regulation* or (ii) in compliance with any existing requirement for obtaining or *retaining* a license or other right or benefit." (Emphasis added.)

The reviser's notes list as examples of "case decisions" those "of a declaratory nature issued in advance of contemplated private activities" or those "forbidding named parties from acting or refraining from acting or threatening to act in some way required or forbidden by the . . . regulations . . . under which the agency is operating". Reviser's Note D, Code § 9-6.14:4.

Clearly, the Commission's refusal to permit licensee's use of its counter for the service of alcoholic beverages constituted a "case de-

cision" within the meaning of the APA. Under APA section 16, case decisions generally are subject to judicial review by declaratory judgment. As the Commission says, section 15 provides for certain exceptions to this general right of review. Pertinent to our inquiry is the provision that judicial review shall not lie to any agency action which "is placed beyond the control of the courts by constitutional or statutory provisions *expressly* precluding court review". Code § 9-6.14:15 (emphasis added). As the reviser's notes indicate, such express preclusions are very "rare". The Commission has cited no express provision precluding review of this case decision, and our independent research has disclosed none. The Commission argues, however, that the licensee's request for permission to serve drinks over this counter is essentially equivalent to an original application for license, and Code § 4-31(f) (Repl. Vol. 1973) expressly precludes review of decisions on such applications.[1] This argument fails for obvious reasons. First, under APA section 15, any preclusion of review must be made expressly and plainly, not by implication or analogy. Second, licensee already had a license and the question raised by its request was hardly equivalent to those posited by an original application. If anything, the proceeding before the Commission more closely resembled a revocation or suspension proceeding. Under Code § 4-37(d), all such proceedings are subject to judicial review.

We conclude, therefore, that the circuit court properly overruled the Commission's demurrer and took jurisdiction of licensee's case.

■ On review, courts are guided by APA section 17 which provides that "the function of the court shall be to determine only whether the result reached by the agency could reasonably be said . . . to be within the scope of the legal authority of the agency"; in making this determination, the reviewing court "shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Code § 9-6.14:17.

■ The "basic law"[2] under which the Commission acted and the purposes thereof are crucial to the function of the reviewing court. Those purposes must be gleaned from an analysis of the overall statu-

---

[1] This statute has been amended to authorize judicial review. Acts 1978, c. 446.

[2] The term "basic law" as used in the APA "means provisions of the Constitution and statutes of the Commonwealth of Virginia authorizing an agency to make regulations or decide cases or containing procedural requirements therefor." Code § 9-6.14:4(C). Upon publication, Commission regulations "necessary to carry out the purposes and provisions of" and "not inconsistent with" the Alcoholic Beverage Control Act "shall have the force and effect of law." Code § 4-11(a).

tory and regulatory scheme for the control of alcoholic beverages. The General Assembly has authorized the Commission to issue "mixed beverage restaurant license[s]" to persons operating a restaurant "whose gross receipts from the sale of meals . . . and nonalcoholic beverages served on the premises" exceed gross receipts from the sale of alcoholic and other beverages. Code § 4-98.2. The term "meals" is defined as "an assortment of foods commonly ordered in bona fide full-service restaurants as principal meals of the day." Code § 4-98.1. See also Code § 4-2(22) defining the phrase "Restaurant licensed by the Commission". In turn, the Commission has defined the phrase "Bona fide, full service restaurant" as an "established place of business where meals with substantial entrees are habitually sold to persons and which has adequate facilities and sufficient employees for cooking or preparing and serving such meals for consumption at tables in dining rooms on the premises." ABC Reg. § 51(d)(3).[3]

Manifestly, the central objective of the legal scheme is to create a class of licensees whose business is primarily that of food service and who, in order to offer a full range of that service, may incidentally sell alcoholic beverages. To ensure that "mixed beverage restaurant" licensees retain their character as "bona fide, full-service restaurants" (as distinguished from bars or saloons offering food only incidentally to the sale of alcohol), the Commission has promulgated regulations prescribing certain standards for a licensee's equipment and furnishings. These standards include those for minimal lighting and accessibility, Reg. §§ 42 and 41(c); minimum surface area of tables, Reg. § 41(c); and maximum percentage of seating provided at counters, Reg. § 41(b2). Moreover, licensees are forbidden to serve alcoholic beverages to patrons not seated at a "table" or "counter",[4] and those terms are defined in Reg. § 41 as follows:

"(b1) 'Table' defined.—A 'table' shall be considered to be an article of furniture generally having a flat top surface supported by legs, a pedestal or a solid base and designed to accommodate the serving of food and refreshments (though such food and refreshments need not necessarily be served together) and provided with seating for customers.

"(b2) 'Counter' defined.—While the definition of a 'table' hereinabove set forth shall be sufficient to include a 'counter', insofar

---

[3] Since July 1, 1978, former Reg. §§ 41 and 51(d)(3), with minor changes, have appeared as Reg. §§ 51(e)5 and 51(e)1, respectively.

[4] Code § 4-98.10(j). This subsection has been repealed. Acts 1978, c. 69.

as the surface area is concerned, a 'counter' shall have characteristics sufficient to make it readily distinguishable from the 'tables' used by a licensee, either by the manner of service and use provided, or by the type of seating provided for patrons, or in both such regards."

Finally, the General Assembly has authorized the Commission to suspend or revoke a license for the use of nonconforming equipment. Code § 4-37(a)(2)(a).

Against this statutory and regulatory background, the Commission refused to permit licensee to serve alcoholic beverages at its counter. The Commission reasoned that "having such a game played on the counter would render it a gaming device and not a table designed to accommodate the serving of food and refreshments. Further, the game involves the throwing of dice and could involve illegal gambling." In a letter to licensee's counsel, the Commission's Secretary further explained that the Commission felt the use of counters "designed as much, if not more so, for amusement purposes than food service" should be limited "lest the bona fide, full service restaurant concept envisioned by the General Assembly in the Mixed Beverage Laws be unduly jeopardized."

It is true, as licensee says, that the literal definitions in Reg. § 41 do not require that tables or counters be designed *solely* or *primarily* to accommodate the service of food and refreshments. But such a requirement would be virtually futile; it would be difficult, if not impossible, to design a "flat top surface" which would accommodate the service of food and drink but not the playing of most board games. The definitions must necessarily be construed and applied to support "the purposes of the basic law", and the interpretation made by the Commission vested with the authority to administer the law is entitled to special weight in the courts.

> "The rationale of the statutory scheme is that the [administrative agency] shall apply expert discretion to the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function." *Schmidt* v. *Board of Adjustment of City of Newark,* 9 N.J. 405, 423, 88 A.2d 607, 615-16 (1952), quoted with approval in *Board of Zoning Appeals* v. *Fowler,* 201 Va. 942, 948, 114 S.E.2d 753, 758 (1960).

Taking "due account of the presumption of official regularity, the experience and specialized competence of the [Commission], and the purposes of the basic law under which the [Commission] has acted", we are of opinion that its ruling cannot "reasonably be said. . .to be [beyond] the scope of [its] legal authority", Code § 9-6.14:17, and we hold that the reviewing court erred in concluding that its action was arbitrary and capricious. The judgment will be reversed and the case remanded for the entry of a new order not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*