COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Bray and Fitzpatrick
Argued at Alexandria, Virginia

BROWN-FORMAN CORPORATION
                                          OPINION BY
v.         Record No. 0304-94-4     JUDGE RICHARD S. BRAY
                                          MAY 23, 1995
SIMS WHOLESALE COMPANY, INC., ET AL.

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Jane Marum Roush, Judge

        Thomas F. Farrell, II (Charles M. Sims; McGuire, Woods,
        Battle & Boothe, on briefs), for appellant.

        John Patrick Griffin, Assistant Attorney General (James S.
        Gilmore, III, Attorney General; Michael K. Jackson, Senior
        Assistant Attorney General, on brief), for appellee
        Virginia Alcoholic Beverage Control Board.

        Philip F. Abraham (Walter A. Marston, Jr.; Randolph A.
        Sutliff; Hazel & Thomas, P.C.; Miles & Stockbridge, on
        brief), for appellee wine wholesalers.


        Brown-Forman Corporation (Brown-Forman), a winery, sought to

terminate distribution agreements with certain wholesalers

(wholesalers) of its products in accordance with the provisions of

the Wine Franchise Act, Code §§ 4.1-400, et seq. (the Act).

Wholesalers challenged the termination as a violation of the Act

and petitioned the Virginia Alcoholic Beverage Control Board (the

Board) for relief.  See Code §§ 4.1-407, -409.  A panel designated

by the Board ruled that termination of such agreements was

permitted by the Act only for "wholesaler deficiency" or

"situations of like character," circumstances not proven by Brown-

Forman.  On appeal by Brown-Forman to the Board, the Board adopted

the panel decision.  Brown-Forman sought judicial review pursuant

to the Virginia Administrative Process Act, Code § 9-6.14:1, et

seq.

The trial court disagreed with the Board's construction of the Act but reached the same result, concluding that Brown-Forman had failed to establish "sufficient good cause to terminate." Before this Court, Brown-Forman contends that the evidence justified termination as a matter of law. Although we concur in the trial court's construction of the Act, we reverse the disposition and remand the proceeding to the Board for reconsideration of the issue of good cause.

The parties proceeded by "Stipulated Facts." Wholesalers distributed several "brands of . . . wines" within "established territories" throughout the Commonwealth under exclusive agreements with Brown-Forman, as supplier/winery. See Code § 4.1-404. Incidental to a "major reorganization of its sales organization," Brown-Forman determined that marketing of its products by "fewer wholesalers over broader geographical areas" would increase "market penetration, sales . . . and profits for both Brown-Forman and [its] wholesalers" and, therefore, "view[ed] consolidation from eighteen [Virginia] wholesalers . . . to four as a material benefit" to "its own economic . . . interest." Accordingly, Brown-Forman terminated existing distribution agreements with wholesalers, intending to thereafter "appoint and contract" with "fewer wholesalers over broader geographic areas." See Code § 4.1-407.

The parties agreed that Brown-Forman's decision was not prompted by the "deficiency" of any wholesaler but, rather, a "good faith exercise" of Brown-Forman's "business judgment," calculated

to promote its "self interest."  Consequently, the parties stipulated that "the sole issue presented . . . is whether the good faith exercise of business judgment by [Brown-Forman], absent any evidence of deficiency in the performance of the [wholesalers], is 'good cause' pursuant to the [Act] for [Brown-Forman] to terminate unilaterally its agreements with [wholesalers]."

The Wine Franchise Act regulates the business relationship of the parties, as winery and wholesaler, through a comprehensive statutory scheme intended:

> 1.  To promote the interests of the parties and the public in fair business relations between wine wholesalers and wineries, and in the continuation of wine wholesalerships on a fair basis;
>
> 2.  To preserve and protect the existing three-tier system for the distribution of wine . . . ;
>
> 3.  To prohibit unfair treatment of wine wholesalers by wineries, promote compliance with valid franchise agreements, and define certain rights and remedies of wineries in regard to cancellation of franchise agreements with wholesalers;
>
> 4.  To establish conditions for creation and continuation of all wholesale wine distributorships . . . .

Code § 4.1-400.  The Act "shall be liberally construed and applied to promote [these] underlying purposes and policies."  Id.

In furtherance of such "purposes and policies," the Act permits a winery to terminate an agreement with a wholesaler only

upon "good cause," Code § 4.1-406, and in accordance with Code § 4.1-407.[1]  Id.  Unless expressly excused by statute, Code § 4.1-407(F), a winery must provide a wholesaler timely written notice of its intention to terminate an agreement which "state[s] all the reasons" for such action.  Code § 4.1-407(A).  Thereafter, the wholesaler is assured an opportunity to rectify the "condition" cited by the winery, if possible.  Code § 4.1-407(B).  If the "reason relates to a condition which may not be rectified by the wholesaler," or remediation is in dispute, the wholesaler may request a hearing before the Board to determine if the winery acted upon "good cause."  Code §§ 4.1-407(C), -407(D).

In a proceeding before the Board on this issue, "the winery shall have the burden of proving the existence of good cause." Code § 4.1-407(E).  The statute specifies that "[g]ood cause shall not include the sale or purchase of a winery," a transaction governed by Code § 4.1-405, but expressly "shall include," though "not limited to," several enumerated circumstances, termed "wholesaler deficiencies" by the parties, none of which occurred in this instance.  Code § 4.1-406 (emphasis added).  Termination without the requisite "good cause" may result in reinstatement of the agreement or in payment by the winery to the wholesaler of "reasonable compensation for the value of [the] agreement" determined in accordance with the statute.  Code § 4.1-409.

In addressing the instant dispute on the stipulated facts, the

---

[1]Compliance with the notice and remedial provisions of Code § 4.1-407 is not in issue.

Board, by reference to the earlier panel decision, concluded that "[t]he act contains no language that permits a winery's unilateral cancellation of agreements with wholesalers in order to consolidate its distributors and to enhance its economic interests in the absence of wholesaler deficiency" (emphasis added). Applying the doctrine of ejusdem generis, the Board concluded that the several specific examples of "good cause" set forth in Code § 4.1-406 manifested a legislative intent to permit termination only upon wholesaler deficiency and "situations of like character," irrespective of Brown-Forman's "self interest."

On judicial review, the trial court concluded that the Board's construction was unduly restrictive and that statutory "'good cause' does not require in every instance a showing of wholesaler deficiencies." The court reasoned that the specific statutory exclusion from "good cause" of "one situation" not involving wholesaler deficiency, the sale or purchase of a winery, "suggests that there are . . . actions by the winery which could" constitute statutory good cause, although unrelated to wholesaler deficiency. Nevertheless, the trial court determined that the "business judgment exercised by Brown-Forman in this case . . ., without more[,] . . . is not sufficient 'good cause' under the statute" and affirmed the decision of the Board. (Emphasis added.)

Judicial review of "[a]ll proceedings under [the Act] shall be held in accordance with the Virginia Administrative Process Act (§ 9-6.14:1 et seq.)." Code § 4.1-410; see Code § 9-6.14:16. "The burden shall be upon the party complaining of agency action to

designate and demonstrate an error of law subject to review by the court."  Code § 9-6.14:17.  The reviewing court must accord considerable deference to an agency's resolution of factual issues, "ascertaining [only] whether there was substantial evidence in the . . . record upon which the agency as the trier of the facts could reasonably find them to be as it did."  Id.; see EDF v. State Water Control Bd., 15 Va. App. 271, 277-78, 422 S.E.2d 608, 611 (1992) (citation omitted).

"In contrast, judicial review of a 'legal issue' requires 'little deference,' unless it . . . 'falls within an agency's area of particular expertise.'"  EDF, 15 Va. App. at 278, 422 S.E.2d at 612 (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 243-46, 369 S.E.2d 1, 8 (1988)).  This distinction "recognizes the 'special competence' of the judiciary to decide issues of 'common law,' 'constitutional law' or 'statutory interpretation'" and a concomitant responsibility not to "'merely rubber-stamp an agency determination.'"  Id.  "We are required to construe the law as it is written" and "'[a]n erroneous construction by those charged with its administration cannot be permitted to override the clear mandates of a statute.'"  Commonwealth v. May Bros., Inc., 11 Va. App. 115, 119, 396 S.E.2d 695, 697 (1990) (quoting Hurt v. Caldwell, 222 Va. 91, 97, 279 S.E.2d 138, 142 (1981)).  The intention of the legislature must always control.  Last v. Va. State Bd. of Medicine, 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992) (citation omitted).

It is well established that "[t]he province of [statutory]

construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation." <u>Winston v. City of Richmond</u>, 196 Va. 403, 408, 83 S.E.2d 728, 731 (1954). "Words are ambiguous if they admit to 'being understood in more than one way[,]' refer to 'two or more things simultaneously[,]' are 'difficult to comprehend,' 'of doubtful import,' or lack 'clearness and definiteness.'" <u>Diggs v. Commonwealth</u>, 6 Va. App. 300, 301-02, 369 S.E.2d 199, 200 (1988) (quoting <u>Brown v. Lukhard</u>, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985)). If "the words of [a] statute are clear and unambiguous," we "give them their plain meaning," and the "general rules of statutory construction" are unnecessary.[2] <u>Diggs</u>, 6 Va. App. at 302, 369 S.E.2d at 200; <u>see</u> <u>May Bros.</u>, 11 Va. App. at 118, 396 S.E.2d at 696. The judiciary may not "change or amend [legislative] enactments under the guise of construing them." <u>Winston</u>, 196 Va. at 407-08, 83 S.E.2d at 731.

Here, we find nothing complex or unclear in the term "good cause" as it relates to termination of a distribution agreement under the Act. Considered together and in proper context, the words simply mean a "well-founded" "reason." <u>Webster's Ninth New Collegiate Dictionary</u> 527, 217 (1989). This very ordinary definition of plain words, used nontechnically, comports perfectly with a statutory scheme intended at once to protect wholesalers from "unfair treatment . . . by wineries" and "promote . . . fair

---

[2]The doctrine of <u>ejusdem generis</u> relied upon by the Board and wholesalers is a rule of statutory construction unnecessary to ascertain clear legislative intent.

business relations between . . . wholesalers and wineries, and . . . the continuation of . . . wholesalerships on a fair basis." Code § 4.1-400. In the event of dispute, the Board has statutory responsibility to "determine if there is good cause" to terminate in such instance, with the burden of proof on the winery. Code § 4.1-407.

Contrary to wholesalers' contention, the statutory references to circumstances which expressly do or do not constitute the contemplated "good cause" introduce no ambiguity to the analysis. Rather, the legislature simply elected to specifically exclude "the sale or purchase of a winery" from the broad sweep of "good cause" and to include certain specific instances of wholesaler deficiency. These express inclusions and exclusions embrace diverse and unrelated circumstances and clearly impose no limitation on one another or any unmentioned good causes for termination under the Act.

Accordingly, we concur with the trial court that the Board erroneously restricted statutory "good cause" to instances of wholesaler deficiency. However, mindful that the Act reserves a determination of disputed good cause to the Board, we remand these proceedings to it for reconsideration of that issue consistent with this opinion.[3] See Virginia Supermarkets v. George, 18 Va. App. 452, 453, 445 S.E.2d 156, 157 (1994).

Reversed and remanded.

---

[3]A determination of good cause and related analysis must address the stipulated facts specific to this case.