Present: Carrico, C.J., Compton, Stephenson, and Keenan, JJ., and Poff, Senior Justice, Whiting, Senior Justice, and Cochran, Retired Justice

SIMS WHOLESALE COMPANY, INC., ET AL.

OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 951144                   April 19, 1996

BROWN-FORMAN CORPORATION

VIRGINIA ALCOHOLIC BEVERAGE CONTROL BOARD

v.  Record No. 951142

BROWN-FORMAN CORPORATION

FROM THE COURT OF APPEALS OF VIRGINIA

In these appeals in a case originating before an administrative agency, we are confronted with a question of statutory interpretation.

We are dealing with Virginia's Wine Franchise Act (the Act), Code §§ 4.1-400 through -418 (Repl. Vol. 1993), a part of the Alcoholic Beverage Control Act. This controversy arose in September 1989. At that time, the Act was codified in §§ 4-118.42 through -118.61 (Supp. 1989). The Act's provisions pertinent to this appeal are the same in both versions. Thus, for clarity we shall refer to the statutes in effect at the time of the May 1995 decision from which this appeal was taken, that is, the version found in the 1993 Replacement Volume of the Code.

The Act is to be "liberally construed and applied to promote its underlying purposes and policies." Code § 4.1-400. One such purpose and policy is to "promote the interests of the parties and the public in fair business relations between wine

wholesalers and wineries, and in the continuation of wine wholesalerships on a fair basis." Id. The Act defines "winery" to include any corporation which enters into an agreement with any Virginia wholesale wine licensee and which "manufactures or sells any wine products, whether licensed in the Commonwealth or not." Code § 4.1-401.

Other stated purposes and policies included in the Act are to "preserve and protect the existing three-tier system for the distribution of wine," Code § 4.1-400(2); to "prohibit unfair treatment of wine wholesalers by wineries" and to "define certain rights and remedies of wineries in regard to cancellation of franchise agreements with wholesalers," id. at (3); and, to "establish conditions for creation and continuation of all wholesale wine distributorships" consistent with all applicable laws, id. at (4).

The focus of this appeal is upon a winery's attempted cancellations unilaterally of agreements with certain Virginia wine wholesalers. As pertinent, the Act provides that "no winery shall unilaterally amend, cancel, terminate or refuse to continue to renew any agreement" unless the winery has given the required statutory notice and unless "good cause" exists for such cancellation or termination. Code § 4.1-406.

The Act further provides, "Good cause shall include, but is not limited to" certain enumerated circumstances. Id. Among the circumstances is revocation of the wholesaler's license to do

business in the Commonwealth; bankruptcy or receivership of the wholesaler; assignment for the benefit of creditors or similar disposition of the wholesaler's assets; and a wholesaler's failure to comply, without reasonable justification, with any written, material requirement imposed by the winery.  Id.

The Act also provides, "Good cause shall not include the sale or purchase of a winery."  Id.  In addition, the Act provides that, except for "discontinuance of a brand or for good cause as provided in § 4.1-406, the purchaser of a winery shall become obligated to all of the terms and conditions of the selling winery's agreements with wholesalers in effect on the date of purchase."  Code § 4.1-405(A).

And, if a winery accomplishes termination or cancellation of an agreement without good cause, the Act provides a procedure for the wholesaler to receive from the winery reasonable compensation for the value of the agreement.  Code § 4.1-409(A).

This case has been litigated upon a stipulation of facts. Appellee Brown-Forman Corporation (the winery), with principal offices in Louisville, Kentucky, manufactures and sells wine products.  Prior to September 27, 1989, the winery supplied its brands of wines to certain Virginia wholesalers for distribution in designated territories pursuant to written agreements.  In the agreements, the parties expressly acknowledged the contracts were subject to the Act.

The winery, exercising its business judgment, determined

that its brands could be more effectively marketed by fewer wholesalers over broader geographic areas.  The winery's experience had been that consolidation of its brands into fewer wholesalers increases "market penetration," sales of its products, and profits for both the winery and its wholesalers. Thus, by letters dated September 27, 1989, the winery notified Virginia wholesalers of its "major reorganization of its sales organization" and that it would terminate existing agreements. The winery planned to consolidate from 18 wholesalers in Virginia to four.

Eleven of the wholesalers are parties appellant.  They are: Sims Wholesale Company, Inc.; House of Beverages, Inc.; James River Beverage Company; Holston Valley Distributing Co., Inc.; Circle Sales, Inc.; Roanoke Distributing Co., Inc., trading as J.P. Distributing; Shenandoah Valley Distributing Co., Inc., trading as Dixie Beverage Company; Service Distributing, Inc.; Lawrence and Nester Distributing Company; Eastern Shore Beverage Distributing, Inc.; and Virginia Imports, Ltd.

Shortly after receiving the termination notices, the wholesalers filed petitions with the Virginia Alcoholic Beverage Control Board (the Board) seeking a determination that the winery had violated the Act, and asking that the notices of intent to terminate the agreements be declared null and void. Subsequently, the parties presented the cases to the Board on the stipulation with a single issue for consideration.

The following additional facts are included in the stipulation. The winery's termination notices did not allege any deficiencies on the part of the wholesalers. The winery's decision to market its brands through fewer wholesalers over broader geographic areas, when viewed from the winery's perspective, was in its economic self interest. The winery's decision that its own economic self interest is served by the consolidation, while erroneous from the wholesalers' perspective, is not clearly arbitrary, capricious, or irrational from the winery's perspective. The winery's decision was made in good faith and constitutes a good faith exercise of business judgment.

The parties stipulated that the sole issue presented is whether the good faith exercise of business judgment by the winery, absent any evidence of deficiencies in the wholesalers' performances, is "good cause" pursuant to the Act for the winery to terminate unilaterally its agreements with the wholesalers without reasonable compensation.

Following a hearing, a panel of the Board's hearing officers concluded in July 1991 that the Act "contains no language that permits a winery's unilateral cancellation of agreements with wholesalers in order to consolidate its distributors and to enhance its economic interests in the absence of wholesaler deficiency." On appeal, the Board adopted the panel's decision, ruling that the winery's reasons for terminating its agreements with the wholesalers do not constitute good cause within the

meaning of the Act.

The winery appealed the Board's decision to the Circuit Court of Fairfax County. Although not agreeing with all the Board's reasoning, the court (Judge Jane Marum Roush), in a January 1994 letter opinion, affirmed the Board's decision. The court determined "that the specific business judgment exercised by Brown-Forman in this case to streamline its operations, without more (and particularly without allegations of any deficiencies on the part of the wholesalers), is not sufficient `good cause' under the statute." The court noted that, contrary to the winery's argument, the winery "is not shackled to the wholesalers until it is forced by the economic inefficiencies of the agreements to go out of business . . . . Instead, it must continue its agreements with the wholesalers or pay them reasonable compensation for the value of the agreements."

The winery appealed the circuit court's decision. Subsequently, a panel of the Court of Appeals ruled unanimously in favor of the winery. Brown-Forman Corp. v. Sims Wholesale Co., 20 Va. App. 423, 457 S.E.2d 426 (1995). The court determined that the term "good cause," as it relates to termination of a distribution agreement under the Act, is unambiguous. "Considered together and in proper context, the words simply mean a `well-founded' `reason.'" 20 Va. App. at 431, 457 S.E.2d at 430. Accordingly, the appellate court agreed with the trial court that the Board erroneously restricted

statutory "good cause" to instances of wholesaler deficiency, and remanded the proceeding to the Board for reconsideration of the issue.  Id.

Determining that the decision of the Court of Appeals involves a matter of significant precedential value, Code § 17-116.07(B), we awarded the wholesalers and the Board separate appeals.

Initially, we shall dispose of an argument advanced by the Board, but not the wholesalers, that the Court of Appeals failed to give proper deference to the Board's decision.  Pointing out that courts play a limited role in reviewing agency decisions under the pertinent provisions of the Administrative Process Act, Code § 9-6.14:17, the Attorney General argues "the judiciary should not substitute its judgment for that of the Board concerning how the Act should be implemented" when, as here, the Board interprets the Act consistent with legislative guidelines.  The Attorney General contends the Court of Appeals' decision violates that principle.  We do not agree the Board's decision in this case should be accorded the great deference urged by the Attorney General.

The sole issue involves a question of statutory interpretation.  The issue does not involve "the substantiality of the evidential support for findings of fact," id. at (iv), which requires great deference because of the specialized competence of the agency.  Instead, when, as here, the question

involves a statutory interpretation issue, "little deference is required to be accorded the agency decision" because the issue falls outside the agency's specialized competence. Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 246, 369 S.E.2d 1, 9 (1988). In sum, pure statutory interpretation is the prerogative of the judiciary. See Hampton Roads Sanitation Dist. Comm'n v. City of Chesapeake, 218 Va. 696, 702, 240 S.E.2d 819, 823 (1978).

Thus, we turn to the question of law presented, the crux of the issue being to determine the meaning of "good cause" as used in the Act. The wholesalers and the Board, contending the term as employed in Code § 4.1-406 is ambiguous, argue "good cause" does not exist unless there are wholesaler deficiencies. The winery, contending the Court of Appeals correctly ruled the term to be unambiguous, argues that "good cause" under § 4.1-406 is always satisfied when a winery terminates a wholesale agreement unilaterally in the good faith exercise of its business judgment.

In order to decide the precise issue presented by these stipulated facts, there is no necessity for us to rule on the question whether the term "good cause" is clear or vague. We will agree with the Court of Appeals and assume without deciding that the term as used in § 4.1-406 is unambiguous. Nonetheless, we disagree with the Court of Appeals that § 4.1-406 "good cause" merely means "a `well-founded' `reason.'" Brown-Forman Corp., 20 Va. App. at 431, 457 S.E.2d at 430.

Like the circuit court, we decline to adopt either argument

made by the opposing parties.  We reject the position of the wholesalers and the Board that "good cause" under the statute as it existed in September 1989 requires in every instance establishment of wholesaler deficiency.  Were that the case, the legislature performed a meaningless act by including in the statute an example of what is not "good cause," that is, the term "shall not include the sale or purchase of a winery."  Every part of a statute is presumed to have some effect and no part will be treated as meaningless unless absolutely necessary.  Raven Red Ash Coal. Corp. v. Absher, 153 Va. 332, 335, 149 S.E. 541, 542 (1929).

We also reject the position of the winery, implicitly endorsed by the Court of Appeals, that "good cause" always exists when a winery unilaterally cancels a wholesaler agreement in the good faith exercise of its business judgment.  Under such an approach, potentially any decision of a winery, not made in bad faith or arbitrarily, to so terminate existing agreements could be viewed as a good faith exercise of business judgment.  If such a decision were sufficient to establish "good cause," the Act's statutory protections also would be meaningless.  See Wright-Moore Corp. v. Ricoh Corp., 908 F.2d 128, 137 (7th Cir. 1990) (franchisor's nonrenewal of distributorship agreement for internal economic reasons, though not shown to be in bad faith, was not for good cause).

An examination of the winery's specific business decision

made in this case requires the unavoidable conclusion that the winery has not established sufficient "good cause" under the statute.  According to the stipulation, the winery's "basis for the terminations was its desire to consolidate its brands into fewer wholesalers over broader geographic areas."

To determine whether "consolidation" or so-called "down-sizing" amounts to statutory "good cause," we examine other portions of the Act, specifically portions dealing with the sale of a winery.  Code § 4.1-406, as we have noted, provides that "good cause" shall not include the sale or purchase of a winery. Code § 4.1-405(A) provides that, except for discontinuance of a brand or for § 4.1-406 "good cause," the purchaser of a winery is obligated to all the terms and conditions of the seller's agreements with wholesalers in effect on the purchase date.  Code § 4.1-405(B)(1) provides that if the surviving winery distributes in Virginia brands of the nonsurviving winery, which that winery marketed prior to the purchase, those brands shall be distributed through any wholesalers who were distributors in Virginia for the nonsurviving winery.

As the circuit court observed, the purchase and sale of a winery likely may lead to some duplication in the pre-sale distribution network of the two wineries thus requiring "some streamlining or other internal reorganization" by the surviving winery.  In other words, when one winery purchases another, thus inheriting a duplicative network of Virginia distributors,

efforts to consolidate become probable.  Yet the statute specifically provides that the sale or purchase of a winery is not "good cause" for termination of wholesaler agreements.  If the General Assembly had meant that a winery's consolidation of its distributorships to streamline operations would amount to "good cause," it would have so provided in the situation of a sale or purchase of a winery.

Thus, we hold, under the stipulated facts, that the winery's good faith exercise of business judgment, there being no evidence of deficiencies in the wholesalers' performances, is not "good cause" under the Act for the winery to terminate unilaterally its agreements with the wholesalers without reasonable compensation.

Before concluding, we shall mention a contention made by the wholesalers, but not the Attorney General, during oral argument at the bar of this Court on February 29, 1996.  Two days prior to the argument, counsel for the wholesalers notified the Court of an enactment passed by the General Assembly and signed into law by the Governor as emergency legislation effective February 26, 1996.  This enactment amended § 4.1-406 of the Act.

In essence, the amendment provides that "good cause" shall not be construed to exist without a finding of a material deficiency for which the wholesaler is responsible.  According to its provisions, the amendment applies in any case in which "good cause" is alleged to exist based on circumstances not specifically set forth in the subdivisions of the statute that

enumerate certain examples of wholesaler deficiencies.  The enactment also provides:  "That the provisions of this act are declaratory of existing law."  Acts 1996, ch. 3.

At the bar, counsel for the wholesalers contended that, in the amendment, the General Assembly made "a legislative interpretation of the original Act."  Counsel said, however, that the amendment is "not binding on this Court," that it is "persuasive" only, and that the Court can "weigh" the amendment "however you see fit."  Counsel for the winery contended inter alia that the amendment, enacted while the very issue it addresses was being considered by the Court, is unconstitutional because it violates the separation of powers doctrine set forth in Article I, Section 5 of the Constitution of Virginia ("the legislative, executive, and judicial departments of the Commonwealth should be separate and distinct").  Counsel for the winery also argued that the amendment is retroactive legislation impairing the obligation of its contracts in violation of Article I, Section 11 of the Constitution of Virginia, citing Heublein, Inc. v. Department of Alcoholic Beverage Control, 237 Va. 192, 196-97, 376 S.E.2d 77, 78-79 (1989) (pre-1989 version of the Act declared unconstitutional in its entirety).

We shall not rule on the effect, if any, of the enactment on the issue presented in this case because we have confined our analysis of the Act to the provisions that were in place in September 1989 when this controversy arose.

Accordingly, the judgment of the Court of Appeals will be reversed and final judgment will be entered here reinstating that portion of the Board's "Final Decision and Order" dated November 22, 1991, as follows:

> "It is ordered that the notices of intent dated September 27, 1989 to terminate the agreements between the respondent[] and the petitioners be, and hereby are declared null and void.
>
> "It is further ordered that respondent Brown-Forman be, and hereby, is, ordered to (i) continue its agreements with the petitioners for the distribution of its wines within the petitioners' primary areas of responsibility or (ii) in the alternative, pay the petitioners reasonable compensation for the value of the agreements pursuant to Section 4-118.50 [now § 4.1-409] of the Act."

<u>Reversed and final judgment</u>.