# CIRCUIT COURT OF THE CITY OF RICHMOND

Virginia Natural Gas, Inc.

v.

State Air Pollution
Control Board

June 4, 1997

Case No. HH-604-4

BY JUDGE RANDALL G. JOHNSON

This is an appeal under the Administrative Process Act, Va. Code §§ 9-6.14:1 *et seq.*, from the adoption by the State Air Pollution Control Board of certain regulations pertaining to motor vehicles which are related to the 1990 amendments to the federal Clean Air Act, 42 U.S.C. §§ 7401 *et seq*. At issue is whether the state statute which authorizes the Board to adopt the type of regulations at issue authorizes the particular regulations adopted. Specifically, does the statute's provision that the standards specified in the statute "shall apply only to (i) motor vehicles registered in [30 enumerated counties and cities] and (ii) motor vehicles not registered in the above-mentioned localities, but having either (a) a base of operations or (b) a majority of their annual travel in one or more of those localities," allow the Board to adopt regulations which contain standards that apply to some of the enumerated localities beginning in model year 1998, but that do not apply to other enumerated localities until model year 2007? For the reasons which follow, the court holds that the regulations at issue are not authorized by statute and, accordingly, are unenforceable.

## I. *Facts and Procedural History*

Petitioner, Virginia Natural Gas, Inc., is a public service corporation certified by the State Corporation Commission to provide natural gas service in several counties and cities mentioned in both the authorizing statute and the regulations in question. Petitioner is in the business of selling for use in motor vehicles the "clean alternative fuels," which are the subject of the regulations. (The regulations in question are published at 12:16 Va. Regs. Reg. 2127 (Apr. 29, 1996).) Additionally, petitioner owns and operates a fleet of vehicles which would be covered by the regulations. Respondent, State Air Pollution Control Board, is an agency of the Commonwealth of Virginia authorized to adopt regulations implementing certain statutes. The Department of Environmental Quality (DEQ) provides staff support to the Board.

The statute in question is Va. Code § 46.2-1179.1. It provides, in pertinent part:

A. For purposes of this section .... "*Fleet*" means any centrally fueled fleet of ten or more motor vehicles owned or operated by a single entity ....

B. The [State Air Pollution Control] Board may adopt by regulation motor vehicle clean alternative fuel fleet standards consistent with the provisions of ... the federal Clean Air Act for model years beginning with the model year 1998 or the first succeeding model year for which adoption of such standards is practicable .... The standards specified in this subsection shall apply only to (i) motor vehicles registered in the Counties of Arlington, Caroline, Charles City, Chesterfield, Fairfax, Fauquier, Hanover, Henrico, James City, Loudoun, Prince William, Stafford, and York and the Cities of Alexandria, Chesapeake, Colonial Heights, Fairfax, Falls Church, Hampton, Hopewell, Manassas, Manassas Park, Newport News, Norfolk, Poquoson, Portsmouth, Richmond, Suffolk, Virginia Beach, and Williamsburg and (ii) motor vehicles not registered in the above-mentioned localities, but having either (a) a base of operations or (b) a majority of their annual travel in one or more of those localities.

In response to the statute, DEQ established an advisory group. An agent of petitioner served on the group. The group drafted proposed regulations for the Board to adopt, imposing the standards involved in all of the localities listed in the statute beginning in 1997 for the 1998 model year. The Board then authorized the publication of the proposed regulations to elicit public comment

and published a Notice of Intended Regulatory Action concerning the proposed regulations. Included in the notice was a description of "Alternatives for Regulatory Action." No mention was made in the notice, including in the "Alternatives" section, of any delay in the implementation date of the program for any of the counties or cities set out in the statute, all of which are located in northern Virginia, the greater Richmond area, or Hampton Roads.

On October 2, 1995, the Board published the proposed regulations. *See* 12:1 Va. Regs. Reg. 29 (Oct. 2, 1995). Public hearings were held during the month of November, 1995, in northern Virginia, the greater Richmond area, and Hampton Roads. During the public hearings, several interested parties in Hampton Roads and greater Richmond argued that the regulations should not apply outside of northern Virginia, the only area of the state required by the federal Clean Air Act to have a program of the type involved here. In its written "Summary and Analysis of Public Testimony" prepared after the public hearings, however, the Board specifically noted that the statute requires the standards to be imposed in *all* of the localities listed.

After the close of the public comment period, the Board met to consider the regulations and proposed amendments. At that point, DEQ recommended a two-year delay in the implementation of the regulations in Hampton Roads and greater Richmond. The Board not only voted to adopt DEQ's recommendation but extended the delay until the year 2007. On April 29, 1996, the final regulations were published in the Virginia Register of Regulations, and petitioner filed a timely appeal to this court. Petitioner argues that the plain language of the statute mandates that the standards be applied equally to all three regions. It further argues that if there is an ambiguity in the statute allowing a contrary interpretation, the legislative history clearly shows an intent to apply the standards to all three regions equally. Additionally, petitioner claims that the Board failed to follow proper procedures by not providing adequate notice of the proposed regulations to all persons entitled to receive notice under applicable law. It asks that the regulations be set aside and that the Board be ordered to hold new meetings to promulgate new regulations consistent with the statute. Petitioner also requests that the court retain jurisdiction over the case, setting a hearing for thirty days after the order to entertain motions arising from the subsequent actions of the Board and motions for attorney's fees.

The Board first demurs to the petition for appeal making many of the same arguments that it uses to defend against the petition. It then asserts that petitioner does not have the requisite standing to bring this appeal. It also argues that the regulations as written do not conflict with the statute. It says that the regulations do apply the standards to all three regions and that the

program implementing the standards does begin for the 1998 model year. It has just delayed the implementation of the program for a few years in greater Richmond and in Hampton Roads. Further, the Board says petitioner lacks standing to raise the notice issue, as petitioner was not entitled to notice. It also argues that the notices were properly made and, if they were not, it was simply harmless error. Accordingly, the Board concludes, the regulations should not be struck. Alternatively, should the court not agree with that position, the Board requests that the court simply strike the regulations as written, but not impose its authority over the Board by retaining jurisdiction and overseeing its future actions.

## II. *Standard of Review*

Usually when the court reviews the actions of an administrative agency, the findings of the agency are entitled to great deference. This is true, for example, when an agency makes findings of fact. *See Brown-Forman Corp. v. Sims Wholesale Co.*, 20 Va. App. 423, 457 S.E.2d 426 (1995), *rev'd on other grounds*, 251 Va. 398, 468 S.E.2d 905 (1996). However:

> judicial review of a legal issue requires little deference unless it falls within an agency's area of particular expertise. This distinction recognizes the special competence of the judiciary to decide issues of common law, constitutional law or statutory interpretation and a concomitant responsibility not to merely rubber-stamp an agency determination. We are required to construe the law as written and [a]n erroneous construction by those charged with its administration cannot be permitted to override the clear mandates of a statute. The intention of the legislature must always control.

*Id.* at 429-30 (citations and quotation marks omitted).

Both parties agree that if petitioner is correct in its position that the statute mandates regulations other than those which are in dispute here, the Board's reasons for enacting the regulations as written are irrelevant. As such, there are no findings of fact to which the court must accord deference. The court is left with a pure issue of statutory interpretation.

## III. *Standing*

The Administrative Process Act confers standing on "[a]ny person affected by and claiming the unlawfulness of any regulation ...." Va. Code § 9-6.14:16.

The Board argues that petitioner does not meet this test as it owns a fleet in Hampton Roads. As such, the argument goes, the regulations do not require anything of petitioner at this point. Further, petitioner is already in compliance with the standards, so even if the regulations applied to that area now, petitioner would not be adversely affected.

The court cannot agree with this analysis. The Model State Administrative Procedure Act uses the wording "adversely affected by." *See* 2 Am. Jur. 2d, *Administrative Law*, § 441 (1994). The Virginia statute does not. Had the General Assembly intended to impose the requirement that the individual be *adversely* affected, it could have done so. Petitioner need only be, as the statute says, *affected* by the regulation. Despite this difference, the court finds that petitioner *is* adversely affected.

First, even if the Board's interpretation is accepted, petitioner's fleet of automobiles is covered by the regulation as enacted. The Board simply says that the implementation date is delayed. If this is true, the regulation affects the fleet. It does not matter when the requirements are imposed. Indeed, if petitioner waits until 2007 to challenge the regulations, the Board will undoubtedly, and correctly, argue that petitioner waited too late, since, under Rule 2A:2 of the Rules of the Supreme Court of Virginia, appeals from the adoption of regulations by state agencies must be filed within thirty days of such adoption. Apparently, it is the Board's position that petitioner, and anyone else not "affected" by the regulations until 2007, simply have no right of appeal.

Second, the fact that petitioner currently complies with the standards is irrelevant. By enacting a regulation which covers petitioner's fleet, even if the implementation will be delayed, the agency is affecting petitioner's future actions. Petitioner will not, because of the subject regulations, be able to buy and operate certain vehicles as part of its fleet in the future. Since vehicles are generally bought for several years of use, the future enforcement of the regulations controls the purchasing decisions made by petitioner now. Finally, petitioner has expended, with the cooperation and guidance of the Board, substantial funds to help build an infrastructure to distribute natural gas to the other regulated fleets in Hampton Roads. The regulations at issue certainly affect that endeavor. Therefore, petitioner unquestionably has standing to pursue this appeal.

## IV. *Legality of Regulations*

The court finds that the plain language of the statute has a clear and unambiguous meaning:

It is well established that [t]he province of [statutory] construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation. Words are ambiguous if they admit to being understood in more than one way[,] refer to two or more things simultaneously[,] are difficult to comprehend, of doubtful import, or lack clearness and definiteness. If the words of [a] statute are clear and unambiguous, we give them their plain meaning, and the general rules of statutory construction are unnecessary. The judiciary may not change or amend [legislative] enactments under the guise of construing them.

*Brown-Forman Corp.*, *supra*, 20 Va. App. at 430, (citations and quotation marks omitted). *See also Moore v. Gillis*, 239 Va. 239, 241, 389 S.E.2d 453 (1990); *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84 (1985).

Therefore, the court need not examine the legislative history, and the extensive interpretation thereof, presented by the parties. Rather, the court will simply apply the language in the statute itself. The statute says:

The Board may adopt by regulation motor vehicle clean alternative fuel fleet standards consistent with the provisions of ... the federal Clean Air Act for model years beginning with the model year 1998 or the first succeeding model year for which adoption of such standards is practicable.

This is clear language. It vests the Board with the discretion to implement a program consistent with federal law, although with regard to northern Virginia, such a program is mandated by federal law. It mandates a starting date with the language "beginning with ..." that is, the Board is not given the authority to change the starting date, except for reasons of impracticability. The Board has conceded that the reason for the implementation delay in the regulations as enacted has nothing to do with practicability, nor is there a record to establish otherwise. Further, the Board concedes that the statute gives it no authority to measure practicability on a location-by-location basis. Therefore, it is clear that the program must begin with model year 1998.

The Board, however, argues that the program *does* begin with model year 1998. This is so, it says, because northern Virginia must comply with the standards beginning in 1998, and in model year 2007, Hampton Roads and greater Richmond will also have to comply with the same standards. The Board's argument is based on a tortured reading of the statute. The statute

gives discretion to implement a program, but gives a clear starting time and a list of localities to which the program "shall" apply. In fact, the Board does not argue that the standards should not apply to all of the localities listed, it simply says that it, the Board, has the authority and discretion to apply the standards to different localities at different times. That argument fails.

As stated above, the statute's plain language gives a very limited amount of discretion to the Board. The particulars of the program are largely provided for the Board by the combination of the federal and state statutes. The Board cannot substitute its judgment on the mandated elements for that of the legislative authorities. Moreover, the statute does not end with the few lines of text already discussed. It goes on to impose penalties on owners of covered fleets, a term specifically defined in the statute, for not complying with the standards adopted. Specifically, § 46.2-1179.1(C) provides:

> An owner of a covered fleet shall not use any motor vehicle or motor vehicle engine which is manufactured during or after the first model year to which the standards specified in subsection A of this section are applicable, *if such vehicle or engine is registered or has its base of operations in the localities specified in subsection B of this section* and has not been certified in accordance with regulations promulgated by the Board.

Emphasis added.

Significantly, the statute does not say that in order to constitute a violation, a noncomplying vehicle or engine must be registered or have its base of operations in the localities specified in regulations adopted by the Board or in the localities in which the Board determines the standards should be applicable. The statute says that "during or after the first model year to which the standards ... are applicable," a violation occurs if a noncomplying vehicle or engine "is registered or has its base of operations in the localities *specified in subsection B of this section*." Emphasis added. Thus, under the regulations as they now exist, an owner of a fleet of vehicles in Richmond, which in 1998 does not comply with the standards adopted in the regulations, will violate those standards and be subject to specified penalties even though the regulations will not then apply to Richmond. Obviously, that is not what the General Assembly intended, and that is not what the statute allows. While the legislature has given the Board discretion in determining *when* the applicable standards take effect, it has not given the Board discretion in determining *where* they take effect.

The court also rejects the Board's argument that greater Richmond and Hampton Roads no longer "environmentally need" the subject program. The General Assembly did not give the Board the power to decide which localities need the subject program, environmentally or otherwise. The General Assembly decided where the program is needed. Its decision is not subject to amendment by a state agency. Accordingly, the Board's demurrer will be overruled, and the subject regulations will be suspended until properly amended in accordance with applicable law and procedure and the views expressed herein. Because the court is confident that the Board is capable of conducting itself in accordance with law without having the court serve as an "overseer," jurisdiction will not be retained.

## V. *Costs and Attorneys' Fees*

The Administrative Process Act requires the court to award reasonable costs and attorneys' fees to a successful petitioner if the agency is found to have acted "unreasonably, unless special circumstances would make an award unjust." Va. Code § 9-6.14:21. The court finds the Board to have acted unreasonably for at least three reasons. First, the Board's argument that petitioner lacks standing to appeal because petitioner is not presently affected by the standards borders on being frivolous. As pointed out earlier, the Board's argument would mean that petitioner can *never* appeal because by model year 2007, the time when the Board says petitioner and other persons in greater Richmond and Hampton Roads are first "affected" by the standards, the time for filing appeals will have long since passed. Indeed, since appeals of the adoption of agency regulations must be filed within thirty days of the *adoption* of such regulations, not their effective dates, the Board's argument would mean that all an agency has to do to prevent an appeal of the adoption of any regulation, thereby insuring that all of its regulations are "challenge proof," is to adopt regulations that are not effective until thirty-one days *after* their adoption. If that argument is not frivolous, it is certainly "unreasonable."

Also all but frivolous is the Board's argument that the regulations do not apply to petitioner because petitioner is already in compliance. Such an argument is like saying a speed limit does not apply to a particular driver until that particular driver exceeds it. Obviously, that is not true. The regulations, like speed limits, apply to everyone. The *penalties* are only assessed against violators.

Lastly, the Board's argument on the legality of the regulations is also unreasonable. Having concluded administratively that the statute requires the standards to be applied in all of the localities listed, the Board's decision to

"delay" implementation in some localities for nine years is less than logical. Indeed, why not a delay of twenty years, or fifty or one hundred? The General Assembly's pronouncements cannot be so easily brushed aside by state agencies, and the agency should have known that.

Based on the above, the court will award costs and attorneys' fees to petitioner. Petitioner must file its request for costs and fees, with whatever explanations and supporting documents it wishes, by June 13, 1997. The Board must file its response, with whatever supporting documents it wishes, by June 20. A final order will not be entered until after the issue of costs and fees is decided.