COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Annunziata and Clements
Argued at Alexandria, Virginia


VIRGINIA IMPORTS LIMITED
                                                      OPINION BY
v.        Record No. 2751-02-4          JUDGE JEAN HARRISON CLEMENTS
                                                  DECEMBER 16, 2003
KIRIN BREWERY OF AMERICA, LLC


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

Walter A. Marston, Jr. (George E. Kostel; Megan Barry; Reed Smith
LLP, on briefs), for appellant.

Warwick R. Furr, II (David S. Black; Richard M. Blau; Elizabeth A.
DeConti; Holland & Knight LLP, on brief), for appellee.


        This appeal arises from an order of the Circuit Court of Fairfax County (circuit court)

reversing the ruling by the Alcoholic Beverage Control Board (ABC Board) that Kirin Brewery

of America, LLC (Kirin) violated the Beer Franchise Act, Code §§ 4.1-500 to 4.1-517, a part of

the Alcoholic Beverage Control Act, in terminating its distributorship agreement with Virginia

Imports Limited (Virginia Imports).  Virginia Imports challenges the circuit court's reversal of

the ABC Board's decision, contending the circuit court erred in determining (1) that, because

Virginia Imports did not timely notify the ABC Board under Code § 4.1-506(B) that it was

attempting to cure the deficiencies identified by Kirin as grounds for terminating the

distributorship agreement and did not timely request a hearing under Code § 4.1-506(D), the

ABC Board did not have authority to hold hearings and render a decision in this case and

(2) that, even if the ABC Board were authorized to adjudicate the dispute between Kirin and

Virginia Imports, the evidence in the record was insufficient to support the ABC Board's

findings that Kirin lacked good cause to terminate the agreement and acted in bad faith in doing so. For the reasons that follow, we affirm the circuit court's judgment in part, reverse the circuit court's judgment in part, and remand the case for further proceedings.

I. BACKGROUND

Kirin, a "brewery," as that term is defined in Code § 4.1-500, and Virginia Imports, a "distributor," as that term is defined in Code § 4.1-500, had a long-standing distributorship agreement giving Virginia Imports the exclusive right to distribute particular brands of Kirin beer in certain designated sales territories in Virginia.[1] However, by letter dated August 3, 1999, Kirin notified Virginia Imports and the ABC Board of its intent to terminate the distributorship agreement in accordance with Code § 4.1-506. That termination letter, which Virginia Imports received on or about August 5, 1999, specifically identified several reasons for the termination that had been previously raised by Kirin in earlier letters to Virginia Imports. Those reasons included Virginia Imports' failure to remove stale beer from retail stores in conformance with Kirin's freshness policy; Virginia Imports' unauthorized sales of Kirin beer outside its designated sales territories and of Kirin brands not assigned to it; and Virginia Imports' failure "to invest in the Kirin brands," "monitor pricing data on competitors' products," "keep chain store reports," and "to commit part of [its] truck fleet to Kirin decal programs." The letter went on to state that Virginia Imports' sale of stale beer and its sale of Kirin products outside of its designated sales territories were the "most egregious" of the cited deficiencies. The letter further stated as follows:

> Section 4.1-506 requires [Kirin] to give [Virginia Imports]
> 90 days written notice of its intent to terminate. Pursuant to that
> section, [Virginia Imports] has 60 days to correct all of the
> above-cited deficiencies. Should [Virginia Imports] fail to correct

---

[1] Code § 4.1-503 prohibits a brewery from entering into a distributorship agreement with more than one beer distributor in a particular sales territory.

completely the deficiencies cited within the statutory period, [Kirin] shall immediately request a hearing before the [ABC Board] in order to terminate [Virginia Imports].

By letter dated October 4, 1999, Virginia Imports notified Kirin that it had cured all of the deficiencies cited in Kirin's termination letter.[2] Virginia Imports, however, failed to send a copy of that cure notice to the ABC Board, as required by Code § 4.1-506(B), which provides that "[a] copy of the [cure] notice shall be mailed at the same time to the Board." Thus, the ABC Board was not notified that Virginia Imports had cured the deficiencies identified by Kirin in its August 3, 1999 termination letter.

By letter dated October 22, 1999, Kirin requested a hearing before the ABC Board pursuant to Code § 4.1-506(D).[3] In pertinent part, that letter, addressed to Virginia Imports and sent to both Virginia Imports and the ABC Board, stated as follows:

> On August 3, 1999, we sent you a letter detailing the numerous problems Kirin . . . has experienced and continues to experience with Virginia Imports . . . . The most egregious of these deficiencies continues to be out-of-code product on the shelves of retail accounts in your market. . . .
>
> Included with our August 3, 1999 letter to you were four previous letters . . . . Throughout our dealings with [Virginia Imports], we informed you of our concerns over out of code beer and our dissatisfaction [with Virginia Imports'] poor service, and sought improvements from you. Pursuant to our statutory right, we copied the August 3, 1999 letter to the [ABC Board], and informed you that we were invoking the ninety (90) day written notice provision of Virginia Code Section 4.1-506, which allows a manufacturer to give a distributor written notice of its intent to terminate. Out of code product remains a problem in your market, and we have not seen any material improvement in service. . . .

\*       \*       \*       \*       \*       \*       \*

---

[2] Neither party disputes the fact that Kirin received Virginia Imports' cure notice within the "sixty-day period" referenced in Code § 4.1-506(B).

[3] Neither party disputes the fact that the ABC Board received Kirin's hearing request within the "ninety-day period" referenced in Code § 4.1-506(D).

. . . As a result, we are compelled to request that the [ABC Board] grant us a hearing to terminate Virginia Imports.

By copy of this letter to [the ABC Board Secretary], we hereby request pursuant to Virginia Code Section 4.1-506(D) that the [ABC Board] grant Kirin an appropriate hearing for consideration of these issues.

By letter of February 9, 2000, the ABC Board Secretary wrote to Kirin as follows:

Our records indicate that by letter dated August 3, 1999, your company gave notice to Virginia Imports, Ltd., of your intent to terminate your agreement designating Virginia Imports, Ltd., as the wholesale distributor of Kirin brands in certain territories in Virginia. More than ninety days have now passed since that notice, and we have received neither a notice from the wholesaler that it has taken action to rectify the conditions constituting the reason for the termination, nor a request for a hearing on the issue of reasonable cause. Therefore, under the provisions of the Beer Franchise Act, the agreement between Kirin and Virginia Imports, Ltd., was effectively terminated ninety days after the August 3, 1999, notice.

Kirin is free to appoint other distributors for the territories formerly held by Virginia Imports, Ltd.

In response, Kirin wrote to the ABC Board Secretary on February 10, 2000, indicating that Kirin was designating Anheuser-Busch, Inc., as its distributor in the sales territories previously served by Virginia Imports.

By letter dated February 11, 2000, Virginia Imports informed the ABC Board Secretary that it had timely notified Kirin in its letter of October 4, 1999, that it had cured the deficiencies identified in Kirin's termination letter of August 3, 1999. Consequently, Virginia Imports asserted, the burden shifted, upon receipt of that letter, to Kirin to request a hearing within fifteen days of the expiration of the cure period if it was not satisfied with Virginia Imports' cure, which Kirin did not do. Virginia Imports asked the ABC Board Secretary to thus suspend the effectiveness of his February 9, 2000 letter until the matter could be clarified. That request was not granted.

By letter dated February 16, 2000, Kirin advised the ABC Board Secretary that the Secretary's February 9, 2000 determination regarding the termination of the distributorship agreement was correct, because Virginia Imports failed to send a copy of its October 4, 2000 letter to the ABC Board. Kirin also informed the ABC Board Secretary that Virginia Imports had failed to cure the deficiencies set forth in Kirin's termination letter and that Virginia Imports had incorrectly stated in its February 11, 2000 letter that Kirin did not timely request a hearing before the ABC Board. "In fact," Kirin wrote, "on October 22, 1999 Kirin sent a letter to . . . Virginia Imports, informing [it] that no cure had been achieved, and requesting that the [ABC Board] convene a hearing to review Kirin's request for termination."

By letter dated April 17, 2000, the ABC Board Secretary informed the parties that, after carefully reviewing the parties' letters regarding his February 9, 2000 letter, he was referring the matter for a hearing. The Secretary wrote as follows:

> It appears that both parties have made procedural errors. Virginia Imports . . . failed to mail its October 4, 1999 cure notice to the Board within the sixty-day cure period as required by subsection B of § 4.1-506 of the Code. Kirin['s] . . . October 22, 1999 request for a hearing before the Board to determine if the conditions have been rectified by the wholesaler failed to be made within fifteen days after expiration of the sixty-day cure period as required by § 4.1-506 B.
>
> Nevertheless, Kirin did send the Board a written request for a hearing within the ninety-day period provided by subsection A of § 4.1-506. Pursuant to subsection D of § 4.1-506[], the matter is being referred to the Adjudication Division to determine if the actions of the wholesaler have rectified the conditions.

By order dated May 15, 2000, the Adjudication Division denied Virginia Imports' motion to reinstate the distributorship agreement between Kirin and Virginia Imports in order to maintain the status quo. By order dated June 23, 2000, the Adjudication Division denied Virginia Import's motion to reconsider the Adjudication Division's May 15, 2000 order.

A hearing panel of the ABC Board held hearings in October and December 2000 "to determine whether Kirin had good cause, as defined in Code Section 4.1-505, to terminate Virginia Imports." On June 28, 2001, the hearing panel issued its written decision, which set forth extensive findings of fact regarding Kirin's implementation of its freshness policy and Virginia Imports' efforts to comply with that policy. The hearing panel found that, "[a]lthough other reasons were cited by Kirin in its letter of proposed termination dated August 3, 1999, the issue that was of paramount importance to Kirin in terminating Virginia Imports was unquestionably the out-of-code issue." Accordingly, the hearing panel focused, in resolving the issue of good cause, entirely on Kirin's freshness policy and made no rulings on Kirin's other asserted reasons for terminating Virginia Imports as its distributor.

The hearing panel found that, "although conceptually an out-of-code policy may be entirely reasonable, the manner in which [Kirin's zero-tolerance] policy was enforced against Virginia Imports was unreasonable, and, indeed, unattainable." The hearing panel concluded, therefore, that Kirin failed to prove that it had imposed a "reasonable and material requirement" on Virginia Imports, as required by Code § 4.1-505. "Having failed to prove an essential element of its case," the hearing panel ruled, "Kirin . . . failed to establish the existence of good cause." The hearing panel further found that, even if Kirin's freshness policy were reasonable, "Virginia Imports substantially complied with that policy." The hearing panel also found that Kirin acted in bad faith in terminating the agreement because "the alleged deficiencies of Virginia Imports and its violation of the zero-tolerance out-of-code policy were pretexts to mask" Kirin's true motive, which was to replace Virginia Imports with another distributor.

Both parties appealed the hearing panel's decision to the ABC Board. On September 26, 2001, the ABC Board issued its final order. In that order, the ABC Board initially ruled as follows:

The issues in this case are framed by the series of letters between the parties concerning the termination. Kirin stated several reasons for the intended termination in its August 3, 1999 notice. Virginia Imports purported to have cured all of the stated reasons in its October 4, 1999 response. . . . In its letter of October 22, 1999, in which Kirin requested . . . a hearing [before the ABC Board], the only condition noted as not rectified by Virginia Imports was that of out of code beer in the market. Therefore, the primary issue to be decided is whether the actions of Virginia Imports brought it into substantial compliance with Kirin's out of code beer policy.

Accordingly, like the hearing panel, the ABC Board focused only on Kirin's freshness policy, in resolving the issue of good cause, and made no rulings on Kirin's other asserted grounds for terminating its distributorship agreement with Virginia Imports.

Adopting the hearing panel's findings of fact with respect to Kirin's imposition of its freshness policy and Virginia Imports' efforts to comply with that policy, the ABC Board overruled the hearing panel's decision in part, finding that Kirin's freshness policy was reasonable. However, the ABC Board also found that Virginia Imports had substantially complied with Kirin's freshness policy.[4] Thus, the ABC Board found that "Kirin's termination of its franchise agreement with Virginia Imports was without good cause, in violation of the Beer Franchise Act." As a remedy, the ABC Board ordered Kirin, pursuant to Code § 4.1-508, to compensate Virginia Imports for the value of the distributorship agreement and for Virginia Imports' losses resulting from the termination.

The ABC Board also overruled the hearing panel's decision with regard to the issue of bad faith, noting as follows:

The hearing panel appears to adopt a theory that a brewery terminating a franchise agreement is guilty of bad faith under the Beer Franchise Act if it possesses a motive which does not amount

---

[4] For purposes of this appeal, neither party disputes the ABC Board's factual findings that Kirin's freshness policy was reasonable and that Virginia Imports substantially complied with Kirin's freshness policy.

- 7 -

to good cause for termination under the Act, even if it has made reasonable and material requirements with which the wholesaler has not substantially complied. The Board does not adopt this interpretation of the Act's requirements.

However, the ABC Board found Kirin "guilty of bad faith in proceeding to terminate its agreement with Virginia Imports in February 2000, even though it was on notice that Virginia Imports had claimed to have taken corrective action with respect to all the causes for termination." As a remedy, the ABC Board ordered Kirin to pay Virginia Imports' reasonable costs and attorney's fees, pursuant to Code § 4.1-509.

Kirin appealed the ABC Board's decision to the circuit court. The circuit court issued an opinion on August 27, 2002, finding that "Virginia Imports failed to preserve its right to contest the termination" of the distributorship agreement between Kirin and Virginia Imports because it neither timely mailed a copy of its cure letter to the ABC Board under Code § 4.1-506(B) nor timely requested a hearing before the ABC Board under Code § 4.1-506(D). Based on that finding, the circuit court further found that the ABC Board Secretary "correctly determined [in his letter of February 9, 2000,] that the distributorship agreement was effectively terminated by operation of law" ninety days after Kirin notified Virginia Imports and the ABC Board of its intent to terminate the agreement. Hence, the circuit court concluded that the ABC Board did not have authority to hear the dispute and render a final order in this case. The circuit court further ruled, in the alternative, that, even if the ABC Board were authorized to adjudicate the dispute regarding the termination of the distributorship agreement, the evidence in the record was insufficient to support the ABC Board's findings that Kirin lacked good cause to terminate the agreement and that Kirin acted in bad faith in terminating the agreement in reliance on the ABC Board Secretary's February 9, 2000 letter. On September 24, 2002, the circuit court entered a final order incorporating its rulings and remanding the case to the ABC Board for dismissal.

This appeal by Virginia Imports followed.

## II. STANDARD OF REVIEW

Code § 4.1-509(B) provides that judicial review of a decision rendered by the ABC Board under the Beer Franchise Act "shall be held in accordance with and governed by the Virginia Administrative Process Act ([now found at Code §§ 2.2-4000 to 2.2-4031)." Code § 2.2-4027, which governs the scope of review when an agency's decision is appealed under the Administrative Process Act, provides, in pertinent part, as follows:

> When the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> . . . [T]he court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.

Under the substantial evidence standard, the reviewing "court may reject the agency's findings of fact 'only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.'" Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (quoting B. Mezines, Administrative Law § 51.01 (1981)). "The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Furthermore, "the court must review the facts in the light most favorable to sustaining the [agency's] action." Bio-Medical Applications of Arlington, Inc. v. Kenley, 4 Va. App. 414, 427, 358 S.E.2d 722, 729 (1987).

- 9 -

However,

> even though an agency's findings of fact may be supported by substantial evidence in the record, [its decision] may be subject to reversal because the agency failed to observe required procedures or to comply with statutory authority. Thus, where the legal issues require a determination by the reviewing court whether an agency has, for example, . . . failed to comply with statutory authority[] or failed to observe required procedures, less deference is required and the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination.

Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 243, 369 S.E.2d 1, 7-8 (1998) (citation omitted).

### III. CODE § 4.1-506

The Beer Franchise Act sets forth the requirements and processes for the termination of a distributorship agreement between a brewery and a distributor and establishes remedies for violations of those requirements and processes. Code § 4.1-505 provides, *inter alia*, that a brewery seeking to terminate a distributorship agreement must comply with the notice provisions of Code § 4.1-506. Code § 4.1-506 describes the specific procedures for terminating a distributorship agreement.

On appeal, Virginia Imports contends the circuit court erred in concluding the ABC Board did not have authority under Code § 4.1-506 to hold hearings and render a decision in this case. Virginia Imports argues the ABC Board had such authority because Kirin timely submitted a written request for a hearing to the ABC Board in accordance with Code § 4.1-506(D).

In response, Kirin argues the circuit court correctly held that, because Virginia Imports failed to comply with the mailing requirement of Code § 4.1-506(B) or request a hearing under Code § 4.1-506(D), the distributorship agreement between Kirin and Virginia Imports ended by operation of law ninety days after Kirin sent its August 3, 1999 termination letter to Virginia Imports. Thus, Kirin argues, the ABC Board did not have authority to hold hearings and render a decision in this case.

The issue before us, then, is whether the ABC Board had authority under Code § 4.1-506 to adjudicate the parties' dispute regarding the termination of their distributorship agreement. This issue involves a question of statutory interpretation and requires us to examine the relevant language of Code § 4.1-506.

Although decisions by administrative agencies regarding matters within their specialized competence are "entitled to special weight in the courts," Johnston-Willis, Ltd., 6 Va. App. at 244, 369 S.E.2d at 8, "when, as here, the question involves an issue of statutory interpretation, 'little deference is required to be accorded the agency decision' because the issue falls outside the agency's specialized competence," Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996) (quoting Johnston-Willis, Ltd., 6 Va. App. at 246, 369 S.E.2d at 9). "In sum, pure statutory interpretation is the prerogative of the judiciary." Id.

In addition, courts are required, "in reviewing an agency decision, . . . to consider . . . the purposes of the basic law under which the agency acted." Johnston-Willis, Ltd., 6 Va. App. at 246, 369 S.E.2d at 9. In Sims Wholesale Co., 251 Va. at 404, 468 S.E.2d at 908, the Supreme Court "determine[d] the meaning of 'good cause' as used in the [Wine Franchise] Act," Code §§ 4.1-400 to 4.1-418. Although that Act, like the Beer Franchise Act, is "a part of the Alcoholic Beverage Control Act," id. at 400, 468 S.E.2d at 906, the Supreme Court rejected the ABC Board's interpretation of the statutory term, id. at 405, 468 S.E.2d at 909, and determined the meaning of "good cause" based upon the purposes of the statute, id. at 400-01, 405-06, 468 S.E.2d at 906, 909.[5]

---

[5] The purposes of the Wine Franchise Act are set forth in Code § 4.1-400, which reads as follows:

> Construction and purpose. — This chapter shall be liberally construed and applied to promote its underlying purposes and policies.

The Beer Franchise Act, however, unlike the Wine Franchise Act, does not contain an enumeration of its underlying purposes or a statement of the standard by which its provisions are to be construed. Nevertheless, we believe that the two Acts, which, except for their specific subject matter, are in every material respect similar, have the same general purposes and standard of construction. Accordingly, we conclude that, like the Wine Franchise Act, the Beer Franchise Act is to be "liberally construed and applied to promote its underlying purposes and policies." Code § 4.1-400. Two such purposes and policies are "[t]o promote the interest of the parties and the public in fair business relations between [beer] wholesalers and [breweries], and in the continuation of [beer] wholesalerships on a fair basis," and "[t]o prohibit unfair treatment of [beer] wholesalers by [breweries], promote compliance with valid franchise agreements, and

---

The underlying purposes and policies of the chapter are:

1. To promote the interests of the parties and the public in fair business relations between wine wholesalers and wineries, and in the continuation of wine wholesalerships on a fair basis;

2. To preserve and protect the existing three-tier system for the distribution of wine, which system is deemed material to the proper regulation by the Board of the distribution of alcoholic beverages;

3. To prohibit unfair treatment of wine wholesalers by wineries, promote compliance with valid franchise agreements, and define certain rights and remedies of wineries in regard to cancellation of franchise agreements with wholesalers;

4. To establish conditions for creation and continuation of all wholesale wine distributorships, including original agreements and any renewals or amendments thereto, to the full extent consistent with the laws and Constitutions of the Commonwealth and the United States; and

5. To provide for a system of designation and registration of franchise agreements between wineries and wholesalers with the Board as an aid to Board regulation of the distribution of wine by wholesalers.

define certain rights and remedies of [breweries] in regard to cancellation of franchise agreements with wholesalers." Code § 4.1-400(1) and 4.1-400(3).

We are further guided by the principle that,

> [i]n the construction of statutes, the courts have but one object, . . . and that is to ascertain the will of the legislature, the true intent and meaning of the statute, which are to be gathered by giving to all the words used their plain meaning, and construing all statutes *in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious and just in their operation.

Tyson v. Scott, 116 Va. 243, 253, 81 S.E. 57, 61 (1914). "Every part of a statute is presumed to have some effect and no part will be treated as meaningless unless absolutely necessary." Sims Wholesale Co., 251 Va. at 405, 468 S.E.2d at 909.

Turning to the statute at issue, Code § 4.1-506 provides, in pertinent part, as follows:

> A. [A] brewery shall provide a wholesaler at least ninety days' prior written notice of any intent to amend, terminate, cancel or not renew any agreement. The notice, a copy of which shall be mailed at the same time to the Board, shall state all the reasons for the intended amendment, termination, cancellation or nonrenewal.
>
> B. Where the reason relates to a condition or conditions which may be rectified by action of the wholesaler, he shall have sixty days in which to take such action and shall, within the sixty-day period, give written notice to the brewery if and when such action is taken. A copy of the notice shall be mailed at the same time to the Board. If such condition has been rectified by action of the wholesaler, then the proposed amendment, termination, cancellation or nonrenewal shall be void and without legal effect. However, where the brewery contends that action on the part of the wholesaler has not rectified one or more of such conditions the brewery shall within fifteen days after the expiration of such sixty-day period request a hearing before the Board to determine if the condition has been rectified by action of the wholesaler.
>
> C. Where the reason relates to a condition which may not be rectified by the wholesaler within the sixty-day period, the wholesaler may request a hearing before the Board to determine if there is good cause for the amendment, termination, cancellation or nonrenewal of the agreement.

D. Upon request in writing within the ninety-day period provided in subsection A from such brewery or wholesaler for a hearing, the Board shall, after notice and hearing, determine if the action of the wholesaler has rectified the condition or, as the case may be, if good cause exists for the amendment, termination, cancellation or nonrenewal of the agreement.

Subsections B, C, and D each address the process of requesting a hearing before the ABC Board. As relevant to this case, Code § 4.1-506(B) permits the brewery, under certain conditions, to request a hearing before the ABC Board for determination of whether the distributor cured the deficiencies identified by the brewery as the grounds for terminating the distributorship agreement. Code § 4.1-506(C) permits the distributor, under certain conditions, to request a hearing before the ABC Board for determination of whether the brewery had good cause to terminate the distributorship agreement. Code § 4.1-506(D) permits the brewery or the distributor, under certain conditions, to request a hearing before the ABC Board for determination of whether the distributor cured the asserted deficiencies or whether the brewery had good cause to terminate the distributorship agreement.

The record shows that, despite having received a timely cure notice from Virginia Imports, Kirin did not request a hearing in this case under Code § 4.1-506(B). The record further shows that, in failing to mail a copy of its cure notice to the ABC Board, Virginia Imports also failed to comply with Code § 4.1-506(B). The record additionally shows that Virginia Imports did not request a hearing under Code § 4.1-506(C). It is clear, then, that the ABC Board's authority to conduct hearings and render a decision in this case was not triggered by either subsection B or subsection C of Code § 4.1-506.

The record also shows, however, that, although Virginia Imports did not request a hearing under Code § 4.1-506(D), Kirin did. Indeed, in its letter of October 22, 1999, which was sent to both Virginia Imports and the ABC Board, Kirin specifically requested that the ABC Board grant it "an appropriate hearing under Code § 4.1-506(D)" to "terminate Virginia Imports."

- 14 -

Code § 4.1-506(D) is an unambiguous directive plainly expressing the intent of the General Assembly that, when either the brewery or the distributor timely submits a written request for a hearing before the ABC Board, the ABC Board is required to hold a hearing and determine, depending on the issue or issues in dispute, whether the distributor has cured the asserted deficiencies and/or whether the brewery has good cause to terminate or otherwise amend the distributorship agreement. Thus, liberally construing Code § 4.1-506(D) in such manner as to make the provisions of Code § 4.1-506 harmonious and just in their operation, and applying it in consideration of the purposes and policies of the Beer Franchise Act to the particular facts and circumstances of this case, we conclude that the ABC Board had jurisdiction in this case to hear and decide the parties' dispute regarding their distributorship agreement.

In reaching this decision, we reject Kirin's argument and the circuit court's ruling that the ABC Board did not have authority to adjudicate this case because Virginia Imports failed to comply with the mailing requirement of Code § 4.1-506(B) or request a hearing under Code § 4.1-506(D). In light of Kirin's failure to timely request a hearing under Code § 4.1-506(B), despite having received a timely cure notice from Virginia Imports, we discern no good reason to conclude that the ABC Board lacked authority to hear the matter upon Kirin's request for a hearing under Code § 4.1-506(D) simply because Virginia Imports failed to comply with the mailing requirement of Code § 4.1-506(B). Moreover, there is no provision in Code § 4.1-506(D), or elsewhere in Code § 4.1-506, that indicates that the distributor's compliance with the mailing requirement of Code § 4.1-506(B) is a necessary prerequisite for adjudication by the ABC Board pursuant to a request by the brewery for a hearing under Code § 4.1-506(D). Nor is there any provision in Code § 4.1-506(D), or elsewhere in Code § 4.1-506, that indicates that the distributor's noncompliance with the mailing requirement of Code § 4.1-506(B) precludes adjudication by the ABC Board pursuant to a hearing request by the brewery under

- 15 -

Code § 4.1-506(D). Similarly, there is no language in Code § 4.1-506(D) that prohibits adjudication of the dispute by the ABC Board when only one of the parties to the distributorship agreement makes a timely request for a hearing under that subsection.

Indeed, to hold as Kirin urges would require us to add language to the plain and unambiguous language of Code § 4.1-506(D), which we may not do. See Williams v Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003) ("When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated."). It would also contravene at least one of the purposes of the Beer Franchise Act. Given the circumstances of this case, to permit the disputed termination of the distributorship agreement to go forward without a hearing before the ABC Board plainly would not be in keeping with the promotion of "the interests of the parties and the public in fair business relations between [beer] wholesalers and [breweries], and in the continuation of [beer] wholesalerships on a fair basis." Code § 4.1-400(1).

Hence, we conclude that Virginia Imports' failure to mail a copy of its cure notice to the ABC Board under Code § 4.1-506(B) or request a hearing under Code § 4.1-506(D) did not create a jurisdictional defect in the proceedings or otherwise divest the ABC Board of statutory authority to adjudicate the parties' dispute pursuant to Kirin's hearing request under Code § 4.1-506(D). We hold, therefore, that the ABC Board had authority under Code § 4.1-506 to hold hearings and render a decision in this case and that the circuit court erred in ruling to the contrary.[6]

---

[6] Our holding is limited to the circuit court's error in ruling that the ABC Board was not authorized to hear the parties' dispute and render a final order in this case. In other words, we do not determine the applicability and effect of Code § 4.1-506(B) and 4.1-506(D) under any other circumstances than those presented in this appeal. Such matters are not before us here.

We turn next to the circuit court's alternative rulings regarding good cause and bad faith.

IV.  GOOD CAUSE

Virginia Imports contends the circuit court erred in concluding that the evidence in the record was insufficient to support the ABC Board's finding that Kirin lacked good cause to terminate the distributorship agreement with Virginia Imports.  In the context of this case, we agree.

Under the Beer Franchise Act, a brewery may not unilaterally terminate a distributorship agreement with a distributor without good cause.  Code § 4.1-505.  Good cause includes, *inter alia*, "[f]ailure by the wholesaler to substantially comply, without reasonable excuse or justification, with any reasonable and material requirement imposed upon him in writing by the brewery."  Id.  The brewery has "the burden of proving the existence of good cause."  Code § 4.1-506(E).

Here, the ABC Board found in its final order that the continuing presence of stale beer in retail stores was the only deficiency identified by Kirin in its October 22, 1999 letter as not having been rectified by Virginia Imports.  Accordingly, the ABC Board addressed and ruled upon only that asserted deficiency, finding that Virginia Imports had substantially complied with the requirements set forth in Kirin's freshness policy.  Thus, the ABC Board found that "Kirin's termination of its franchise agreement with Virginia Imports was without good cause."

On review, the circuit court "defer[red] to the Board's findings regarding the issue of Virginia Imports' sale of out-of-code or stale beer."  The court then found as follows:

> Kirin's termination letter of August 3, 1999 set forth numerous deficiencies in Virginia Imports' performance.  In addition to the out-of-code sales issue, the letter complained of "sales of beer outside of designated territory," "sales of brands not assigned to [Virginia Imports]," "failure to keep chain store reports," "failure to monitor pricing data on competitors products," and other alleged sales performance deficiencies.

- 17 -

Kirin identified the sale of out-of-code beer as the "most egregious" of Virginia Imports' deficiencies. Virginia Imports and the Board contend that Kirin waived the other identified deficiencies in its letter of October 22, 1999 requesting a hearing and by its counsel's representations to the hearing panel that the issue of stale beer was the most important issue and one for which it would have terminated the contract even in the absence of the other alleged deficiencies.

The Board found in its final order that "the only condition noted [in Kirin's October 22, 1999 letter] as not rectified by Virginia Imports was that of out of code beer in the market." That finding is clearly erroneous. Kirin's October 22, 1999 letter cited the continuing problem with out-of-code beer. It also referred to Kirin's "dissatisfaction with [Virginia Imports'] poor service." The letter cited previous letters and memos to Virginia Imports regarding "point of sale issues and . . . the drop off in sales of Kirin beer in the market," as well as the fact that Kirin had "not seen any material improvement in service." Kirin's letter referred to memos regarding "problems which continued in the market" and requested "a hearing on these issues."

The Court concludes that Kirin did not waive its complaints regarding issues other than freshness by failing to enumerate all such issues in its October 22, 1999 letter or by stating that the freshness issue was its primary concern.

The Board failed to address and rule upon all of the issues raised by Kirin with respect to its grounds for termination of the agreement, most notably Kirin's complaints about deficient sales reports and sales efforts with chain stores. Therefore, the record lacks substantial evidence to support the Board's finding that Kirin was without good cause for terminating the agreement.

The circuit court subsequently ordered that the case be remanded to the ABC Board "with directions that it be dismissed in its entirety."

We concur with the circuit court's findings that "Kirin did not waive its complaints regarding issues other than freshness by failing to enumerate all such issues in its October 22, 1999 letter or by stating that the freshness issue was its primary concern" and that the ABC Board erred in finding in its final order that "'the only condition noted [in Kirin's October 22, 1999 letter] as not rectified by Virginia Imports was that of out of code beer in the market.'"

- 18 -

Plainly, an indication by a party that a particular issue is more important than other issues does not amount to a waiver of the other issues. Moreover, while it contains no specific listing of the deficiencies relied upon by Kirin as grounds for terminating its distributorship agreement with Virginia Imports, Kirin's October 22, 1999 letter expressly refers to Kirin's August 3, 1999 letter, which does contain such a list,[7] and clearly expresses Kirin's continuing concern with Virginia Imports' "poor service" and lack of "any material improvement" therein subsequent to Kirin's August 3, 1999 letter. Thus, Kirin's October 22, 1999 letter was sufficient to notify the ABC Board and Virginia Imports of Kirin's claim that the deficiencies identified in Kirin's August 3, 1999 letter had not been rectified by Virginia Imports and were therefore grounds for terminating the distributorship agreement.

We further concur with the circuit court's finding that the ABC Board "failed to address and rule upon all of the issues raised by Kirin with respect to its grounds for termination of the agreement." As previously noted, the ABC Board focused solely on Kirin's claim that Virginia Imports had failed to comply with it freshness policy.

We do not concur, however, with the circuit court's conclusion that, because the ABC Board failed to consider all of the deficiencies raised by Kirin and determine whether they constituted good cause to terminate the distributorship agreement, "the record lacks substantial evidence to support the Board's finding that Kirin was without good cause for terminating the agreement." We believe that, in reaching that conclusion on such a basis, the circuit court has misapplied the substantial evidence standard of review.

---

[7] As the circuit court notes, Kirin's August 3, 1999 letter specifically identifies several instances of Virginia Imports' "poor service," including its failure to remove stale beer from retail stores in conformance with Kirin's freshness policy; its unauthorized sales of Kirin beer outside its designated sales territories and of Kirin brands not assigned to it; and its failure "to invest in the Kirin brands," "monitor pricing data on competitors' products," "keep chain store reports," and "to commit part of [its] truck fleet to Kirin decal programs."

- 19 -

In addressing the substantial evidence standard in <u>Johnston-Willis, Ltd.</u>, we stated as follows:

> The determination of an issue of fact is to be made solely on the basis of the whole evidentiary record provided by the agency and the reviewing court is limited to that agency record. "A reviewing court may not, however, use its review of an agency's procedures as a pretext for substituting its judgment for the agency's on the factual issues decided by the agency."

6 Va. App. at 243, 369 S.E.2d at 8 (citations omitted) (quoting <u>State Board of Health v. Godfrey</u>, 223 Va. 423, 434, 290 S.E.2d 875, 881 (1982)). By analogy, a reviewing court also may not use its review of an agency's compliance with statutory authority to impose its judgment on factual issues that are to be decided by the agency.

Here, as previously noted, the ABC Board had authority to adjudicate the dispute in this case under Code § 4.1-506(D). Code § 4.1-506(D) provides that, upon a properly submitted request for a hearing, the ABC Board "*shall* . . . determine if the action of the wholesaler has rectified the condition or, as the case may be, if good cause exists for the . . . termination." (Emphasis added.) Thus, having received a properly submitted request for a hearing from Kirin in its October 22, 1999 letter, the ABC Board was required, in accordance with the clear mandate of Code § 4.1-506(D), to determine, upon consideration of the testimonial and documentary evidence presented by the parties, whether Kirin had satisfied its burden of proving that Virginia Imports had not rectified all of the deficiencies identified in Kirin's August 3, 1999 letter and that at least one of the unrectified deficiencies, if any, constituted good cause to terminate the distributorship agreement. <u>See also</u> Code §§ 4.1-505(4) and 4.1-506(E). However, in focusing solely on the stale-beer issue and failing to make the required determination with regard to the other deficiencies identified in Kirin's August 3, 1999 letter, the ABC Board failed to comply with the mandatory directive of Code § 4.1-506(D).

If a court finds that an agency has failed to comply with statutory authority, "the court shall suspend or set the decision aside and remand the matter to the agency." Virginia Bd. of Medicine v. Fetta, 244 Va. 276, 280, 421 S.E.2d 410, 412 (1992); Code § 2.2-4029. Hence, having found in this case that the ABC Board had "failed to address and rule upon all of the issues raised by Kirin with respect to its grounds for termination of the agreement," the circuit court, rather than imposing its own judgment on the matter, should have suspended the ABC Board's decision and remanded the matter back to the ABC Board with instructions to make the additional required factual determinations.

We hold, therefore, that the circuit court erred in ruling that, because the ABC Board did not make the requisite factual findings, the record lacks substantial evidence to support the ABC Board's finding that Kirin did not have good cause to terminate the distributorship agreement. Accordingly, we reverse the circuit court's ruling, suspend the ABC Board's decision regarding the issue of good cause, and remand this matter to the circuit court for remand to the ABC Board with instructions to consider, upon the existing evidentiary record, all of the deficiencies asserted by Kirin in its August 3, 1999 letter, except the deficiency already addressed and ruled upon relating to Kirin's freshness policy, and to determine with respect to each of those previously unaddressed deficiencies whether Kirin satisfied its burden of proving it had good cause to terminate the subject distributorship agreement.[8]

## V.  BAD FAITH

Virginia Imports contends the circuit court erred in determining that there was not substantial evidence in the record to support the ABC Board's findings that Kirin acted in bad faith in terminating the distributorship agreement in reliance on the ABC Board Secretary's

---

[8] Virginia Imports suggests that we make this determination ourselves, but we may not. See Fetta, 244 Va. at 280, 421 S.E.2d at 412 (holding that the "court itself may not undertake the agency action directly").

February 9, 2000 letter.[9]  The evidence, Virginia Imports asserts, shows that Kirin "knew or should have known . . . that the February 9 letter was a clear mistake" and that Kirin purposefully exploited that "obvious mistake" to terminate the distributorship agreement before a hearing by the ABC Board was held.  Thus, Virginia Imports concludes, the ABC Board's finding that Kirin was guilty of bad faith was justified.  We disagree.

Code § 4.1-509 provides that the ABC Board "may, if it finds that a brewery or beer wholesaler has acted in bad faith in violating any provision of this chapter or in seeking relief pursuant to this chapter, award reasonable costs and attorneys' fees to the prevailing party."

Here, the ABC Board found that Kirin, having received Virginia Imports' October 4, 1999 cure letter, acted in bad faith in terminating the distributorship agreement in reliance on the ABC Board Secretary's February 9, 2000 letter.  The ABC Board's final order reads as follows:

> Kirin is guilty of bad faith in proceeding to terminate its agreement with Virginia Imports in February, 2000, even though it was on notice that Virginia Imports had claimed to have taken corrective action with respect to all the causes for termination.  Such action triggered statutory provisions requiring a hearing and providing for continuation of the agreement pending the Board's decision and any judicial review thereof, unless the Board made a finding of

---

[9] Virginia Imports also argues in its opening appellate brief that Kirin, having already decided to replace Virginia Imports with another distributor, employed "bad faith tactics" in imposing an "unachievable" freshness-dating requirement on Virginia Imports in order to "manufacture" evidence of Virginia Imports' performance deficiencies and, thus, establish "good cause" to terminate its distributor agreement with Virginia Imports.  That issue, however, is not before us in this case.  In its final order, the ABC Board rejected the same claim, finding that, Kirin's motives notwithstanding, Kirin's imposition of a freshness-dating requirement on Virginia Imports was "reasonable" and "material."  "It would not be bad faith," the ABC Board concluded, "for a manufacturer to terminate a franchise agreement if a wholesaler failed to substantially comply, without reasonable excuse or justification, with such a requirement."  Virginia Imports did not appeal the ABC Board's ruling to the circuit court in this case, and the circuit court did not address that issue.  Accordingly, we will not consider it here. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1988) (holding that, pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court").

good cause for the termination.[10] While the Secretary to the Board was unaware of Virginia Imports' claim of corrective action due to the failure of Virginia Imports to forward a copy of its letter to the Board, Kirin knew at the time it requested a letter allowing it to proceed to appoint a new wholesaler in the territory formerly served by Virginia Imports that such an action was not statutorily permitted. Therefore, the Board ORDERS that Kirin pay to Virginia Imports reasonable costs and attorney's fees.

(Footnote added.)

There is, however, as the circuit court observed, "no evidence in the record that Kirin requested a letter allowing it to appoint a replacement for Virginia Imports."[11] Likewise, there is no evidence in the record establishing what Kirin knew or did not know on February 10, 2000, when, in response to the ABC Board Secretary's February 9, 2000 letter informing Kirin that its agreement with Virginia Imports was terminated and that it was "free to appoint other distributors for the territories formerly held by Virginia Imports," Kirin selected a new distributor to replace Virginia Imports. Moreover, we cannot say, as a matter of law, that Kirin's reliance on the ABC Board Secretary's letter was unreasonable. Despite Virginia Imports' assertions to the contrary, the ABC Board Secretary's determination that the parties' distributorship agreement "was effectively terminate[d] ninety days after [Kirin's] August 3, 1999 notice" plainly was not a "clear" or "obvious mistake," as reflected by the complexity of the issues involved in that determination (see, e.g., our discussion above regarding Code

---

[10] Code § 4.1-506(E) provides, in pertinent part, as follows:

> Where a petition is made to the Board in a timely manner for a determination, the agreement in question shall continue in effect pending the Board's decision and any judicial review thereof, except in any case in which the Board makes a finding that there is good cause, as defined in [Code] § 4.1-505, for the . . . termination . . ., in which case the brewery may, unless otherwise ordered by a court of record, discontinue the agreement in question.

[11] Virginia Imports concedes as much in both of its appellate briefs.

§ 4.1-506) and the disparate rulings regarding that determination of those who have adjudicated this case. Hence, we agree with the circuit court that "Kirin should not be required to second-guess the [ABC Board] Secretary's interpretation of the [Beer Franchise] Act."

We conclude, therefore, that the record lacks substantial evidence to support the ABC Board's finding that Kirin acted in bad faith in terminating the distributorship agreement with Virginia Imports in reliance on ABC Board Secretary's February 9, 2000 letter. Accordingly, we affirm the circuit court's reversal of that judgment by the ABC Board.

VI. CONCLUSION

In sum, we affirm the circuit court's ruling that the record does not contain substantial evidence to support the ABC Board's finding that Kirin acted in bad faith in terminating the distributorship agreement with Virginia Imports; we reverse the circuit court's rulings that the ABC Board did not have authority under Code § 4.1-506 to hold hearings and render a decision in this case and that, because the ABC Board failed to consider all of the deficiencies identified in Kirin's August 3, 1999 letter, the evidence in the record was insufficient to support the ABC Board's finding that Kirin lacked good cause to terminate the distributorship agreement; and we remand the case to the circuit court for remand to the ABC Board for further proceedings consistent with this opinion.

Affirmed, in part, and
reversed and remanded, in part.