COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


SPECIALTY BEVERAGE COMPANY, INC.

OPINION BY
v.       Record No. 0026-07-2                JUDGE JEAN HARRISON CLEMENTS
JANUARY 22, 2008

VIRGINIA ALCOHOLIC BEVERAGE
  CONTROL BOARD AND BRECKENRIDGE
  BREWERY OF COLORADO, LLC


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

Mark C. Shuford (Megan B. Larkin; Kaufman & Canoles, P.C., on
briefs), for appellant.

K. Michelle Welch, Assistant Attorney General (Robert F.
McDonnell, Attorney General; Frank S. Ferguson, Deputy Attorney
General, on brief), for appellee Virginia Alcoholic Beverage
Control Board.

(Kimberley Ann Murphy; Hale Carlson Penn, PLC, on brief), for
appellee Breckenridge Brewery of Colorado, LLC.  Appellee
Breckenridge Brewery of Colorado, LLC submitting on brief.


This appeal arises from an order of the Circuit Court of the City of Richmond (circuit

court) affirming the decision of the Alcoholic Beverage Control Board (ABC Board) that the

distributor agreement between Specialty Beverage Company, Inc. (Specialty Beverage) and

Breckenridge Brewery of Colorado, LLC (Breckenridge) was terminated under the Beer

Franchise Act, Code §§ 4.1-500 to 4.1-517, upon Specialty Beverage's failure to timely file a

cure letter or request a hearing on the issue of good cause in response to Breckenridge's notice of

its intent to terminate the distributor agreement.  On appeal, Specialty Beverage contends the

circuit court erred in affirming the ABC Board's rulings that (1) Breckenridge's notice of intent

to terminate was sufficient to trigger a termination under the Beer Franchise Act and

(2) Specialty Beverage's timely written response to that notice of intent to terminate did not

constitute a valid notice of cure under the Beer Franchise Act. Holding that Breckenridge's

notice of intent to terminate was insufficient, as a matter of law, to trigger the termination of the

distributor agreement, we reverse the circuit court's judgment and remand the case for further

proceedings.

## I. BACKGROUND

The facts relevant to this appeal are not in dispute. Specialty Beverage, a "distributor"

and "wholesaler" as those terms are defined in Code § 4.1-500, and Breckenridge, a "brewery,"

as that term is defined in Code § 4.1-500, entered into a distributor agreement on November 26,

1996, giving Specialty Beverage the exclusive right to distribute Breckenridge beer in certain

designated sales territories in Virginia. However, by letter dated February 13, 2006,

Breckenridge notified Specialty Beverage and the ABC Board of its intent to terminate the

November 26, 1996 distributor agreement in accordance with Code § 4.1-506. The letter

identified the following reasons for the termination:

> Specialty Beverage has consistently failed to meet the performance
> standards under Section 11 of the Distributor Agreement,[1] and
> repeatedly failed to timely pay monies due Breckenridge. In
> addition, Specialty Beverage has failed to operate its business in
> accordance with the operating standards set forth in Section 6 of
> the Distributor Agreement,[2] even after market visits by our staff
> and receiving notice of such deficiencies from Breckenridge.

---

[1] Entitled "Performance Standards," section 11 of the distributor agreement sets forth various requirements concerning the quantity of Breckenridge beer that must be sold by Specialty Beverage. Pursuant to the section, the different minimum amounts that must be sold depend on how the beer is packaged and change from year to year by virtue of the terms of the original agreement, absent subsequent agreements to the contrary.

[2] Entitled "Operation of Distributor," section 6 of the distributor agreement sets forth numerous requirements concerning Specialty Beverage's storage, delivery, stocking, selling, and marketing of Breckenridge beer. The listed requirements run the gamut from having Specialty Beverage maintain "clean, refrigerated and operational warehouse(s)" and ensure "proper stock

(Footnotes added.)  No other reasons for the termination were given, and no further details of the referenced deficiencies were provided.  Moreover, nothing in or with the letter showed what specific deficiencies, if any, Specialty Beverage had previously received notice of from Breckenridge.

In a letter dated February 21, 2006, Specialty Beverage notified Breckenridge that, because Breckenridge's February 13, 2006 letter did not "identif[y] any specific condition or conditions for [Specialty Beverage] to rectify," Specialty Beverage did not accept the letter as a valid notice of termination under Code § 4.1-506.  Specialty Beverage also denied Breckenridge's assertions that Specialty Beverage had failed to comply with the distributor agreement and that Specialty Beverage had received previous notice from Breckenridge of any such failings:

> At all times, Specialty Beverage has conformed with all of the performance standards set forth in the Distributor Agreement and it has otherwise fully complied with the terms of that agreement, including, but not limited to, the timely payment of all funds due Breckenridge.  Contrary to the last sentence of the second paragraph of your letter, we have not received any formal or information notices of deficiencies from Breckenridge.

Neither Specialty Beverage nor Breckenridge requested a hearing before the ABC Board at that time.  By letter dated May 17, 2006, the ABC Board notified Breckenridge and Specialty Beverage that, because Specialty Beverage "failed to request a hearing to determine whether good cause exist[ed] for the termination within the requisite 90 days," the distributor agreement between Breckenridge and Specialty Beverage was terminated and Breckenridge could appoint another Virginia distributor for its beer.

---

rotation in the warehouse, vehicles and retail locations" to making Specialty Beverage responsible for "monitor[ing] the marketing activities of competing products" and "notify[ing] Breckenridge of any consumer or retailer complaints in regard to [its p]roducts."

On May 31, 2006, Specialty Beverage wrote to the ABC Board asking it to retract its decision that the distributor agreement was terminated. By letter dated June 14, 2006, the ABC Board denied Specialty Beverage's request, reasoning that its decision was correct because Specialty Beverage neither timely requested "a hearing on the issue of good cause for the termination" nor timely provided "notice to Breckenridge that [the] conditions providing cause for the termination [were] rectified" by Specialty Beverage. Referring to Specialty Beverage's February 21, 2006 letter, the ABC Board further explained:

> Your letter to Breckenridge put them on notice that you felt their notice was insufficient and you did not believe that Specialty [Beverage] was responsible for any material deficiency in its performance under the distribution agreement. Under these circumstances, a request for a hearing on the issue of good cause within the 90-day notice period would have been appropriate, and if one had been received, the matter would have been referred for hearing. However, your letter did not request such a hearing, nor did it indicate any corrective action which would have shifted the burden to request a hearing to Breckenridge.
>
> Therefore, we are not retracting our May 17, 2006 letter on this matter.

Specialty Beverage appealed the ABC Board's decision to the circuit court, arguing (1) that Breckenridge's February 13, 2006 letter was not sufficient to trigger the termination of the distributor agreement because it failed to identify any specific performance or operating standards that Specialty Beverage had allegedly violated and (2) that, even if the February 13, 2006 letter was a valid notice of intent to terminate, Specialty Beverage's February 21, 2006 letter constituted a valid notice of cure under Code § 4.1-506. After hearing argument on the matter, the circuit court rejected Specialty Beverage's arguments and affirmed the ABC Board's decision. The court held that the distributor agreement between Specialty Beverage and Breckenridge was terminated under the Beer Franchise Act because Specialty Beverage neither timely filed a cure letter nor timely requested a hearing before the ABC Board to determine

- 4 -

whether there was good cause to terminate the distributor agreement. In reaching that conclusion, the court initially stated that it agreed with Specialty Beverage that Breckenridge's February 13, 2006 notice of intent to terminate "contained merely conclusions to which [Specialty Beverage] could not intelligently respond for corrective action." Nevertheless, the court went on to state that Specialty Beverage's February 21, 2006 letter "was not a cure letter" under Code § 4.1-506(B) and that Specialty Beverage should have "demand[ed] a hearing before the [ABC] Board under . . . Code § 4.1-506(C) on the basis that Breckenridge was attempting to terminate without good cause." The court concluded that, because Specialty Beverage failed to request such a hearing, the distributor agreement terminated ninety days after Breckenridge notified Specialty Beverage and the ABC Board of its intent to terminate the agreement.

This appeal by Specialty Beverage followed.

## II. ANALYSIS

On appeal, Specialty Beverage first contends Breckenridge's February 13, 2006 letter notifying Specialty Beverage of its intent to terminate the distributor agreement was insufficient, as a matter of law, to constitute a valid notice of intent to terminate under the Beer Franchise Act because it failed to identify any specific deficiencies that Specialty Beverage needed to rectify to reestablish its compliance with the agreement. The letter's general, conclusory accusations were insufficient, Specialty Beverage argues, to render the letter a proper notice under Code § 4.1-506(A). Thus, Specialty Beverage concludes, the circuit court erred in upholding the ABC Board's decision that Breckenridge's February 13, 2006 letter was sufficient to trigger the termination of the distributor agreement.

In response, Breckenridge and the ABC Board contend the circuit court and the ABC Board correctly concluded that Breckenridge's February 13, 2006 letter constituted a valid notice of intent to terminate under the Beer Franchise Act and was thus sufficient to trigger the

- 5 -

termination of the distributor agreement. Breckenridge and the ABC Board argue that, if Specialty Beverage believed Breckenridge's February 13, 2006 letter was legally flawed, it should have requested a hearing under Code § 4.1-506(C) to compel Breckenridge to show good cause for the termination. Because Specialty Beverage failed to request such a hearing, the termination was valid, Breckenridge and the ABC Board conclude. We disagree with Breckenridge and the ABC Board.

The question before us—whether Breckenridge's February 13, 2006 notice of intent to terminate the distributor agreement with Specialty Beverage was legally sufficient to trigger the termination of the distributor agreement—involves an issue of statutory interpretation requiring us to examine the relevant provisions of the Beer Franchise Act.

> Although decisions by administrative agencies regarding matters within their specialized competence are "entitled to special weight in the courts," Johnston-Willis, Ltd. [v. Kenley], 6 Va. App. [231,] 244, 369 S.E.2d [1,] 8 [(1998)], "when, as here, the question involves an issue of statutory interpretation, 'little deference is required to be accorded the agency decision' because the issue falls outside the agency's specialized competence," Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996) (quoting Johnston-Willis, Ltd., 6 Va. App. at 246, 369 S.E.2d at 9). "In sum, pure statutory interpretation is the prerogative of the judiciary." Id.

Va. Imps., Ltd. v. Kirin Brewery of Am., LLC, 41 Va. App. 806, 821, 589 S.E.2d 470, 477 (2003). Thus, we review the instant issue *de novo*. See Mattaponi Indian Tribe v. Dep't of Envtl. Quality ex rel. State Water Control Bd., 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004) (recognizing that an issue of statutory interpretation is to be reviewed *de novo*), aff'd sub nom. Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 621 S.E.2d 78 (2005).

We are further mindful that, in reviewing issues of statutory interpretation,

> "courts have but one object, . . . and that is to ascertain the will of the legislature, the true intent and meaning of the statute, which are

- 6 -

> to be gathered by giving to all the words used their plain meaning, and construing all statutes *in pari materia* in such manner as to . . . make the body of the laws harmonious and just in their operation."

Va. Imps., Ltd., 41 Va. App. at 822-23, 589 S.E.2d at 478 (quoting Tyson v. Scott, 116 Va. 243, 253, 81 S.E. 57, 61 (1914)).  In addition, "we consider all relevant provisions of a statute and do not isolate particular words or phrases."  Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002); see also Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957) (recognizing that statutes *in pari materia* "'are not to be considered as isolated fragments of law, but as a whole, or as parts of . . . a single and complete statutory arrangement'" (quoting 50 Am. Jur., Statutes, § 349)).  Moreover, in reviewing a decision of an agency, we must consider "'the purposes of the basic law under which the agency acted.'"  Va. Imps., Ltd., 41 Va. App. at 821, 589 S.E.2d at 477 (quoting Johnston-Willis, Ltd., 6 Va. App. at 246, 369 S.E.2d at 9).

As we noted in Virginia Imports, the "Beer Franchise Act sets forth the requirements and processes for the termination of a distributor[] agreement between a brewery and a distributor."  Id. at 820, 589 S.E.2d at 477.

> [L]ike the Wine Franchise Act, the Beer Franchise Act is to be "liberally construed and applied to promote its underlying purposes and policies."  Code § 4.1-400.  Two such purposes and policies are "[t]o promote the interest of the parties and the public in fair business relations between [beer] wholesalers and [breweries], and in the continuation of [beer] wholesalerships on a fair basis," and "[t]o prohibit unfair treatment of [beer] wholesalers by [breweries], promote compliance with valid franchise agreements, and define certain rights and remedies of [breweries] in regard to cancellation of franchise agreements with wholesalers."  Code §§ 4.1-400(1) and 4.1-400(3).

Id. at 822, 589 S.E.2d at 478 (second and subsequent alterations in original).

Guided by the aforementioned principles, we turn to the statutes of the Beer Franchise Act that set forth the requirements for terminating a distributor agreement, Code §§ 4.1-505 and

4.1-506. Code § 4.1-505 provides, in pertinent part, that "no brewery shall unilaterally . . . terminate . . . an agreement, unless the brewery has first complied with § 4.1-506 and good cause exists for . . . termination." Good cause includes, *inter alia*, "[f]ailure by the wholesaler to substantially comply, without reasonable excuse or justification, with any reasonable and material requirement imposed upon him in writing by the brewery." Code § 4.1-505(4). In relevant part, Code § 4.1-506 provides as follows:

> A. . . . [A] brewery shall provide a wholesaler at least ninety days' prior written notice of any intent to . . . terminate . . . any agreement. The notice . . . *shall state all the reasons for the intended . . . termination . . . .*

> B. Where *the reason relates to a condition or conditions which may be rectified by action of the wholesaler*, he shall have sixty days in which to take such action and shall, within the sixty-day period, give written notice to the brewery if and when such action is taken. . . . If such condition has been rectified by action of the wholesaler, then the proposed . . . termination . . . shall be void and without legal effect. However, where the brewery contends that action on the part of the wholesaler has not rectified one or more of such conditions the brewery shall within fifteen days after the expiration of such sixty-day period request a hearing before the Board to determine if the condition has been rectified by action of the wholesaler.

> C. Where *the reason relates to a condition which may not be rectified by the wholesaler* within the sixty-day period, the wholesaler may request a hearing before the Board to determine if there is good cause for the . . . termination . . . of the agreement.

(Emphases added.)

Breckenridge and the ABC Board argue that, because Code § 4.1-506(A) merely requires the brewery's notice to state "all the reasons" for the intended termination and sets forth no requirement regarding the specificity of those reasons, the inclusion in Breckenridge's February 13, 2006 letter of the three general reasons for the termination—Specialty Beverage's failure to (1) "meet the performance standards under Section 11 of the Distributor Agreement," (2) "timely pay monies due Breckenridge," and (3) "operate its business in accordance with the operating

standards set forth in Section 6 of the Distributor Agreement"—satisfies the statute's mandate. That argument, while seemingly sound at first blush, ultimately fails because it focuses on the statute's requirement that the "notice . . . shall state all the reasons for the intended . . . termination" in isolation, without regard for the related portions of the statute and the manifest intention of the legislature expressed therein.

Code § 4.1-506(B) and 4.1-506(C) also address the reasons for the intended termination that are to be stated in a brewery's notice. The two subsections procedurally distinguish between those reasons for termination that involve conditions the wholesaler can cure within sixty days and those that do not involve conditions the wholesaler can cure within sixty days. If the reasons identified by the brewery relate to conditions that can be "rectified by action of the wholesaler, [the wholesaler] shall have sixty days in which to take such action." Code § 4.1-506(B). Indeed, if the wholesaler rectifies the deficient conditions within the sixty-day period, "the proposed . . . termination . . . [is] void and without legal effect." Id. Conversely, if the reasons identified by the brewery relate to conditions that cannot be "rectified by the wholesaler within the sixty-day period, the wholesaler may request a hearing before the [ABC] Board to determine if there is good cause for the . . . termination . . . of the agreement." Code § 4.1-506(C).

It is undeniable that, in order to determine whether the reasons identified by a brewery in its notice relate to conditions that can be rectified within sixty days and, indeed, in order to rectify those conditions pursuant to Code § 4.1-506(B), the wholesaler must know the specific conditions to which the reasons relate. Clearly, a wholesaler cannot know what needs to be done to rectify a condition if it is unaware of or unable to identify the condition that needs rectifying. It stands to reason, therefore, that, in requiring in Code § 4.1-506(A) that the brewery state in the notice "all the reasons" for the intended termination, the legislature intended that the brewery identify the wholesaler's deficiencies with sufficient specificity to allow the wholesaler to make

- 9 -

the requisite determinations under Code § 4.1-506(B) and 4.1-506(C) and to afford the wholesaler the opportunity to timely cure the asserted deficiencies under Code § 4.1-506(B), if possible. To permit a brewery to state in its notice only general, conclusory reasons for the intended termination, as Breckenridge urges us to do, would plainly contradict the manifest intention of the legislature expressed in Code § 4.1-506 and undermine the underlying purposes and policies of the Beer Franchise Act.

Here, the reasons given by Breckenridge for terminating the distributor agreement failed to identify the specific conditions to which the reasons related. Indeed, Breckenridge's notice of intent to terminate failed to specifically identify any distinct deficiencies and, as the circuit court noted, "contained merely conclusions to which [Specialty Beverage] could not intelligently respond for corrective action." Although some of the reasons given in the notice referred generally to sections of the distributor agreement that Specialty Beverage had allegedly violated, none of the stated reasons identified any specific requirements in the distributor agreement with which Specialty Beverage had allegedly failed to comply or any specific acts or omissions by Specialty Beverage that constituted a violation of the distributor agreement or other requirement imposed upon Specialty Beverage by Breckenridge. In other words, the reasons given by Breckenridge for terminating the distributor agreement were not specific enough to allow Specialty Beverage to determine whether the stated reasons related to conditions that could be cured within sixty days, much less allow the wholesaler to actually take steps to cure any such conditions.

Thus, "liberally construing Code § 4.1-506[(A)] in such manner as to make the provisions of Code § 4.1-506 harmonious and just in their operation, and applying [that statute] in [a manner consistent with] the purposes and policies of the Beer Franchise Act to the particular facts and circumstances of this case," Va. Imps., Ltd., 41 Va. App. at 825, 589 S.E.2d

- 10 -

at 479, we conclude that Breckenridge's February 13, 2006 letter did not constitute a valid notice of intent to terminate under Code § 4.1-506(A). Accordingly, it was insufficient, as a matter of law, to trigger the termination of the distributor agreement. See Code § 4.1-505 ("[N]o brewery shall unilaterally . . . terminate . . . an agreement, unless the brewery has first complied with § 4.1-506 . . . ."). Hence, the distributor agreement was not terminated.[3]

## III. CONCLUSION

For these reasons, we reverse the circuit court's affirmance of the ABC Board's decision that the distributor agreement was terminated, and we remand the case to the circuit court for remand to the ABC Board for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

[3] In reaching this conclusion, we reject Breckenridge's argument and the circuit court's and ABC Board's rulings that the distributor agreement was terminated because Specialty Beverage failed to timely request a hearing to determine whether good cause existed for termination. Because Breckenridge's February 13, 2006 letter was not a valid notice under Code § 4.1-506(A) and thus legally insufficient to trigger the termination of the distributor agreement, the issue of good cause is immaterial and Specialty Beverage's failure to timely request a hearing on that issue is of no consequence.

Moreover, in light of our disposition of this case, we need not consider Specialty Beverage's remaining claim that its February 21, 2006 letter constituted a valid notice of cure under Code § 4.1-506(B).